**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

CYNTHIA REDD, individually, and
on behalf of all others similarly situated,

                Plaintiff,

      v.

AMAZON.COM, INC. and
AMAZON.COM LLC,

                Defendants.

No. 1:20-cv-06485

Honorable Mary M. Rowland

**AMAZON'S MEMORANDUM OF LAW IN SUPPORT OF ITS
<u>MOTION FOR SUMMARY JUDGMENT</u>**

**Table of Contents**

Page

INTRODUCTION .......................................................................................................... 1

BACKGROUND ........................................................................................................... 2

    A.    Amazon's Temperature Screening............................................................. 2

    B.    Ms. Redd's Claims.................................................................................... 4

    C.    Procedural History ................................................................................... 5

LEGAL STANDARD.................................................................................................... 6

ARGUMENT ................................................................................................................ 6

    A.    The PREP Act Bars Ms. Redd's Claims ................................................. 6

        1.    Amazon is immune to Ms. Redd's claims under the PREP Act. ............ 6

            a.    The ICI cameras are covered countermeasures. ........................ 7

            b.    Amazon is a covered person. ...................................................... 8

            c.    Redd's claims have a causal relationship to Amazon's use
                of the ICI cameras. .................................................................. 10

        2.    The PREP Act preempts BIPA in this case. .......................................... 11

    B.    Amazon Did Not Collect, Possess, or Disclose Ms. Redd's Biometric Data ... 12

        1.    There is no evidence that the ICI camera systems performed "facial
            recognition," or any other form of facial, retina, or iris
            measurement or analysis, on Ms. Redd. ............................................... 12

        2.    There is no evidence that the ICI camera systems collected,
            generated, or relied on "biometric identifiers" or "biometric
            information." .......................................................................................... 14

        3.    There is no evidence that Amazon "collected," "possessed," or
            "disclosed" Ms. Redd's biometric data. ............................................... 15

    C.    Ms. Redd Is Not Entitled to Any Remedy ........................................... 17

        1.    Ms. Redd is not entitled to statutory damages. .................................... 18

        2.    Ms. Redd is not entitled to injunctive relief......................................... 19

        3.    Ms. Redd is not entitled to declaratory relief....................................... 19

CONCLUSION............................................................................................................20

## Table of Authorities

**Page(s)**

CASES

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)................................................................................................12

*Aux Sable Liquid Prods. v. Murphy*,
    526 F.3d 1028 (7th Cir. 2008) ................................................................................17

*Carpenter v. McDonald's Corp.*,
    580 F. Supp. 3d 512 (N.D. Ill. 2022) ......................................................................20

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)................................................................................................18

*Cervantes v. Ardagh Grp.*,
    914 F.3d 560 (7th Cir. 2019) .............................................................................21, 23

*Doe v. Chao*,
    540 U.S. 614 (2004)................................................................................................24

*Farwell v. Google LLC*,
    No. 21-cv-01122, 2022 WL 1568361 (C.D. Ill. Mar. 31, 2022)............................17

*Garcia v. Welltower OpCo Grp. LLC*,
    522 F. Supp. 3d 734 (C.D. Cal. 2021) ....................................................................13

*Grant v. Trs. of Ind. Univ.*,
    870 F.3d 562 (7th Cir. 2017) ..................................................................................12

*Gullen v. Facebook, Inc.*,
    No. 16-CV-00937, 2018 WL 1609337 (N.D. Cal. Apr. 3, 2018), *aff'd*, 772 F.
    App'x 481 (9th Cir. 2019) .......................................................................................20

*In re Facebook Biometric Information Privacy Litig.*,
    No. 3:15-cv-03747-JD (N.D. Cal. July 9, 2020) (Dkt. 465)..............................20, 22

*Jacobs v. Hanwha Techwin Am., Inc.*,
    No. 21 C 866, 2021 WL 3172967 (N.D. Ill. July 27, 2021) ..............................22, 23

*LAJIM, LLC v. Gen. Elec. Co.*,
    No. 13-CV-50348, 2017 WL 3922139 (N.D. Ill. Sept. 7, 2017), *aff'd*, 917
    F.3d 933 (7th Cir. 2019) .........................................................................................25

*Levy v. West Coast Life Ins. Co.*,
    44 F.4th 621 (7th Cir. 2022) ...................................................................................25

*LiiON, LLC v. Vertiv Grp. Corp.*,
    No. 18-CV-6133, 2021 WL 4963610 (N.D. Ill. Oct. 26, 2021), *appeal dismissed*, No. 21-3202, 2022 WL 1656604 (7th Cir. Apr. 27, 2022) ...................................23

*Mills v. Hartford Health Care Corp.*,
    No. HHDCV206134761S, 2021 WL 4895676 (Conn. Super. Ct. Sept. 27, 2021) ..................................................................................................................16

*Modrowski v. Pigatto*,
    712 F.3d 1166 (7th Cir. 2013) ............................................................................18

*Parker v. St. Lawrence Cnty. Pub. Health Dep't*,
    102 A.D.3d 140 (N.Y. App. Div. 2012) .............................................................17

*Rivera v. Google Inc.*,
    238 F. Supp. 3d 1088 (N.D. Ill. 2017) ..........................................................20, 24

*Sierakowski v. Ryan*,
    223 F.3d 440 (7th Cir. 2000) ..............................................................................25

*Sosa v. Onfido, Inc.*,
    No. 20-cv-4247, 2022 WL 1211506 (N.D. Ill. Apr. 25, 2022)............................21

*Stephens v. Erickson*,
    569 F.3d 779 (7th Cir. 2009) ........................................................................12, 18

*Sterk v. Redbox Automated Retail, LLC*,
    770 F.3d 618 (7th Cir. 2014) ........................................................................23, 24

*Wells v. IFR Eng'g Co.*,
    247 Ill. App. 3d 43 (1993) ..................................................................................24

**STATUTES**

740 ILCS § 14/10 ....................................................................................................7, 20, 21

740 ILCS § 14/15(d) ..............................................................................................11, 22, 23

42 U.S.C. § 6d(i)(7)(A)(i)(I) ...............................................................................................13

42 U.S.C. § 247d.................................................................................................................13

42 U.S.C. § 247d-6d(i)(1)(A) .............................................................................................13

42 U.S.C. § 247d-6d(i)(2)(B)(iii)........................................................................................15

42 U.S.C. § 247d-6d(i)(2)(B)(v).........................................................................................15

42 U.S.C. § 247d-6d(i)(6) ...................................................................................................15

42 U.S.C. § 247d-6d(i)(8)(B) ....................................................................................15

42 U.S.C. § 247d-6d(iv) ............................................................................................15

42 U.S.C. § 247d-6d(a)(1) ...........................................................................13, 16, 17

42 U.S.C. § 247d-6d(b)(1) ........................................................................................13

42 U.S.C. § 247d-6d(b)(8) ........................................................................................17

Children's Online Privacy Protection Rule (COPPA) ...............................................17

Food, Drug, and Cosmetic Act Section 201(h) .........................................................14

Food, Drug, and Cosmetic Act Section 510(k) .........................................................14

Illinois Biometric Information Privacy Act (BIPA) ........................................... passim

Public Readiness and Emergency Preparedness Act (PREP) ............................... passim

**RULES**

Fed. R. Civ. P. 56(a) .............................................................................................7, 12

Local Rule 56.1(a) .......................................................................................................7

**REGULATIONS**

85 Fed. Reg. 15,198, 15,199, 2020 WL 1245193 (Mar. 17, 2020),
U.S. Dep't of Health & Human Svcs., Declaration Under the Public Readiness
and Emergency Preparedness Act for Medical Countermeasures Against
COVID-19.................................................................................................................16

85 Fed. Reg. 35,100-01, 35,102 (June 8, 2020),
U.S. Dep't of Health & Human Svcs., Second Amendment to Declaration
Under the Public Readiness and Emergency Preparedness Act for Medical
Countermeasures Against COVID-19 ......................................................................13

85 Fed. Reg. 79190-01, 79,195 (Dec. 9, 2020),
U.S. Dep't of Health & Human Svcs., Fourth Amendment to the Declaration
Under the Public Readiness and Emergency Preparedness Act for Medical
Countermeasures Against COVID-19 and Republication of the Declaration ........15

**OTHER AUTHORITIES**

Supremacy Clause of the U.S. Constitution.............................................................17

U.S. Dep't of Health & Human Servs., Off. Of Gen Couns., Advisory Op. 20-04
at 2 (Oct. 22, 2020), as modified (Oct. 23, 2020) ...........................................14, 16

U.S. Dep't of Health & Human Servs., Off. Of Gen Couns., Advisory Op. 21-01,
    at 3 (Jan. 8, 2021)..................................................................................................................16

Pursuant to Federal Rule of Civil Procedure 56(a), defendants Amazon.com, Inc. and Amazon.com Services LLC (formerly known as "Amazon.com LLC") (collectively, "Amazon")[1] respectfully request that this Court grant summary judgment in Amazon's favor with respect to all claims asserted by plaintiff Cynthia Redd in her individual capacity.

## INTRODUCTION

COVID-19 is the deadliest pandemic in American history. Amazon responded to the unprecedented threat with safety measures designed to protect its employees and the public. At the height of the pandemic, those measures included screening employees for elevated body temperatures (a sign of potential infection) before they began work each day. Public health authorities authorized and encouraged such measures to combat COVID-19, and Amazon's temperature screenings were based on that guidance.

In some facilities, Amazon used thermal cameras—that is, cameras capable of remotely detecting temperatures using infrared technology—to check employees' temperatures. Plaintiff Cynthia Redd is an Amazon employee who had her temperature checked by those cameras. She admits that Amazon used the cameras to check her temperature and to protect her and her coworkers from the threat of COVID-19. But, she alleges, Amazon also secretly configured those same cameras to operate as "facial recognition devices," and then used the cameras to collect biometric data about her—specifically, "scans" of her "facial geometry, retinas, and irises." Second Am. Compl. ("SAC") ¶ 7 (Dkt. 55). Based on those allegations, Ms. Redd claims Amazon violated the Illinois Biometric Information Privacy Act ("BIPA"), which governs the collection and use of "biometric identifiers" and "biometric information."[2]

---

[1] Amazon.com LLC no longer exists and therefore is not a proper defendant. Amazon assumes Ms. Redd intended to sue the entity that currently employs her—namely, Amazon.com Services LLC—and Ms. Redd has never argued otherwise. *See* Amazon's Local Rule 56.1(a) Statement of Material Facts in Support of Motion for Summary Judgment ("Amazon SOF") ¶ 3.

[2] Under BIPA, "biometric identifiers" include "scan[s]" of "face geometry" and "retina or iris scan[s]." 740 ILCS § 14/10. "Biometric information" means "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." *Id*. In this brief, Amazon refers to "biometric identifiers" and "biometric information," collectively, as "biometric data."

1

The record does not support Ms. Redd's far-fetched accusations. After two years of hard-fought litigation and more than one year of discovery, there is no evidence that Amazon screened employees' temperatures for any reason except to reduce the spread of COVID-19. Nor is there any evidence that Amazon collected or used biometric data about employees. *Indeed, there is not a single example of biometric data—regarding Ms. Redd or anyone else—in the entire record.* In short, Ms. Redd has wholly failed to substantiate her allegations. Amazon is therefore entitled to summary judgment on her individual claims for three reasons.[3]

**First,** Ms. Redd's claims are barred by the Public Readiness and Emergency Preparedness ("PREP") Act, a federal law that provides sweeping immunity against claims based on measures to combat the spread of COVID-19, including Amazon's temperature-screening measures. Separately but relatedly, the PREP Act also preempts Ms. Redd's claims under the doctrine of express preemption.

**Second,** the record is utterly devoid of evidence supporting Ms. Redd's BIPA claims—much less evidence that would support a jury verdict in her favor. Most fundamentally, there is no evidence that Amazon's temperature screenings relied on *any* kind of biometric data, let alone the kind of biometric data governed by BIPA. Nor is there any evidence that Amazon collected, possessed, or disclosed Ms. Redd's data. Simply stated, Ms. Redd cannot point to any evidence showing that Amazon surreptitiously captured or used her biometric data.

**Third,** the record makes clear that Ms. Redd is not entitled to any of the forms of relief authorized by BIPA. Amazon is entitled to summary judgment on that ground, as well.

## BACKGROUND

### A. Amazon's Temperature Screening

Fever is a common symptom of COVID-19. *See* Amazon SOF ¶ 21. Thus, many public health authorities have endorsed screening employees for elevated temperatures, including with thermal cameras, to reduce transmission rates. *See id.* ¶ 23. For example, the FDA has sought to

---

[3] Although Ms. Redd seeks to represent a class, *see* SAC ¶¶ 58-59, this motion seeks summary judgment solely on her individual claims, as authorized by the Court. *See* Dkt. 61.

expand the availability and use of thermal cameras for "initial temperature assessment," including in "high throughput areas," such as "warehouses." *Id*. ¶ 22.

Consistent with that public health guidance, Amazon used thermal cameras to screen the temperatures of employees who worked in some of its warehouse facilities, including in Illinois. *See id*. ¶ 24. Using thermal cameras in high-traffic warehouse settings allowed Amazon to check employees' temperatures, and thereby reduce the risk of COVID-19 transmission, quickly and efficiently. *See id*. ¶ 27.

One of the facilities at which Amazon used thermal cameras was the MDW7 facility in Monee, Illinois. *See id*. ¶ 29. Amazon used thermal cameras to screen employees' temperatures at MDW7 from about April or May of 2020 to about August 2021. *See id*. ¶ 30. Ms. Redd worked at MDW7 from about October 2020 to about March 2022. *See id*. ¶ 31. She claims that Amazon used thermal cameras to check her temperature (and, allegedly, to collect her biometric data) at MDW7 multiple times while she worked there. *See id*. ¶ 32.

Amazon purchased the cameras used at MDW7 from Infrared Cameras, Inc. ("ICI"). *See id*. ¶ 35. The cameras were operated via ICI's software, which was installed on Amazon-owned laptops connected to the cameras. *See id*. ¶¶ 38, 39. The laptops and the cameras were also connected to ICI devices that calibrated the cameras' temperature-sensing technology. *See id*. ¶ 40. (For brevity, Amazon refers to the ICI cameras, the ICI software, the laptops used to operate the cameras, and all related devices used to check temperatures at MDW7 as the "ICI camera systems.") The ICI camera systems were positioned near the entrances of MDW7 so that employees' temperatures could be checked as they arrived for work each day. *See id*. ¶ 43. Amazon personnel supervised the process, including by monitoring the laptops and making sure employees positioned themselves correctly in front of the cameras. *See id*. ¶ 44.

During the temperature checks, ICI's software generated bounding boxes approximating the location of employees' faces in the cameras' visual fields. *See id*. ¶ 45. The bounding boxes were displayed on the laptops' screens, along with real-time images and temperature readings (but no identifying information, such as employees' names). *See id*. ¶ 47. The bounding boxes

helped ensure the cameras focused on employees' faces—which provide the most accurate readings for ICI's temperature-sensing technology—rather than other body parts or background objects. *See id*. ¶ 48. The ICI cameras used built-in infrared technology to take temperature readings from the surfaces of employees' faces, i.e., from the areas inside the bounding boxes. *See id*. ¶ 49. ICI's software converted those temperature readings into real-time core temperature estimates, which Amazon used to screen for potential fevers. *See id*. ¶ 50.

There is no evidence that any part of this process involved any form of biometric data. To the contrary, the record shows that Amazon designed the process to avoid the collection and use of *any* personal information. For example, there is some evidence suggesting the ICI camera systems could have been configured to perform facial recognition, that is, to verify employees' identities based on analysis and comparisons of their facial images. *See id*. ¶ 51. But Amazon never enabled that functionality. *See id*. ¶ 52. In fact, Amazon did not use any functionality that could have identified employees. *See id*. ¶ 55. Rather, Amazon purposely configured the ICI camera systems and designed its procedures not to collect or store employees' names; not to associate employees' names with temperature readings or any other data; and not to collect or store other personal data. *See id*. Accordingly, there is no evidence that Amazon collected or used any biometric data that could be used to identify employees.

Further protecting employees' privacy and security, Amazon designed the ICI camera systems as "closed" systems. In other words, the devices were connected via hard-wired (not wireless) connections and were not connected to other devices or to Amazon's network. *See id*. ¶ 56. Amazon also configured the laptops so that they would not connect to Amazon's network. *See id*. ¶ 57. As a result, even if the ICI camera systems inadvertently collected information about employees (they did not), it would not be stored on Amazon's network. *See id*. ¶ 58.

## B.  Ms. Redd's Claims

Ms. Redd claims that Amazon used the ICI camera systems to collect scans of her facial geometry, retinas, and irises without her knowledge or consent. *See* SAC ¶¶ 4, 5, 7, 43, 44. And, she alleges, Amazon not only collected and stored her biometric data, but it also subsequently

4

disclosed that data "to other Amazon entities, to the third-party biometric device and software vendor(s), and to other, currently unknown, third parties, which, inter alia, host and/or analyze the biometric data." *Id*. ¶ 34.

Based on those allegations, Ms. Redd asserts three BIPA claims. First, she alleges that Amazon violated Section 15(b) of BIPA by collecting her biometric data without first providing the notice and obtaining the consent required by Section 15(b). *See* 740 ILCS § 14/15(b); *see also* SAC ¶¶ 78-86. Second, she alleges that Amazon violated Section 15(a) by possessing her biometric data without adopting a "written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying" that data. 740 ILCS § 14/15(a); *see also* SAC ¶¶ 70-77. Third, she alleges that Amazon violated Section 15(d) by disclosing her biometric data without her consent. *See* 740 ILCS § 14/15(d); *see also* SAC ¶¶ 87-94.

## C.  Procedural History

This case was filed in September 2020. At that time, Michael Jerinic was the sole named plaintiff. *See* Dkt. 1-1. Mr. Jerinic dropped out of the case in March 2021 and was replaced by William Naughton. *See* Dkts. 31, 33. In November 2021, Mr. Naughton failed to appear for his properly noticed deposition. He was then replaced by Ms. Redd. *See* Dkts. 48, 53, 55. All three plaintiffs have consistently asserted the same claims based on the same allegations.

Fact discovery lasted for well over one year, from January 2021 to June 2022. *See* Dkts. 25, 77. During that time, Amazon responded to more than two dozen interrogatories. *See* Amazon SOF ¶ 7. Amazon also produced more than 17,000 pages of documents, including technical documents regarding the ICI camera systems—productions Ms. Redd has described as "voluminous." *See id*. ¶¶ 8-9. In addition, Amazon served subpoenas duces tecum on three non-party companies from which it purchased thermal cameras, including ICI. *See id*. ¶ 10. Amazon produced all documents it received from those non-parties to Ms. Redd. *See id*. ¶ 11. Ms. Redd also deposed two Amazon witnesses. *See id*. ¶¶ 13-14.

Expert discovery closed on September 2, 2022. *See* Dkt. 77. Although she bears the burden of proof on her claims, Ms. Redd did not produce any expert reports, including on the

5

ICI camera systems. *See* Amazon SOF ¶ 16. In fact, Ms. Redd has never even viewed the
ICI camera systems used at MDW7. Nor has she examined any of the other thermal cameras
used by Amazon. *See id*. ¶¶ 17-18.

## LEGAL STANDARD

Summary judgment must be granted "if the movant shows that there is no genuine
dispute as to any material fact and the movant is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(a). "As the 'put up or shut up' moment in a lawsuit, summary judgment
requires a non-moving party to respond to the moving party's properly-supported motion by
identifying specific, admissible evidence showing that there is a genuine dispute of material fact
for trial." *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (internal quotation marks
and citation omitted). If the non-moving party cannot meet that burden, then summary judgment
is proper. Importantly, the "mere existence of a scintilla of evidence in support of the [non-
moving party's] position will be insufficient; there must be evidence on which the jury could
reasonably find for the nonmoving party." *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir.
2009) (citation omitted). Thus, "[i]f the evidence [adduced by the non-moving party] is merely
colorable, or is not significantly probative, summary judgment may be granted." *Anderson v.
Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (citation omitted).

## ARGUMENT

### A.  The PREP Act Bars Ms. Redd's Claims

As a threshold matter, this Court may grant Amazon's motion without turning to the utter
lack of evidence to support Ms. Redd's claims. Even were such evidence to exist (it does not),
Ms. Redd's claims would be barred by the PREP Act. The Court could and should grant
summary judgment in Amazon's favor on that ground alone.

#### 1.  Amazon is immune to Ms. Redd's claims under the PREP Act.

The PREP Act helps ensure swift and effective responses to public health emergencies by
limiting liability for individuals and entities who seek to respond to those emergencies. The

statute is triggered when the Secretary of HHS (the "Secretary") declares "that a disease or other health condition" constitutes "a public health emergency." 42 U.S.C. § 247d-6d(b)(1). "Once the Secretary has issued a declaration, the PREP Act provides sweeping immunity for certain claims against certain covered individuals." *Garcia v. Welltower OpCo Grp. LLC*, 522 F. Supp. 3d 734, 739 (C.D. Cal. 2021). Specifically, the PREP Act provides that any "covered person" is "immune from suit and liability under Federal and State law" for "all claims for loss caused by, arising out of, relating to, or resulting from the administration to or use by an individual of a covered countermeasure." 42 U.S.C. § 247d-6d(a)(1).

Here, the Secretary has declared that COVID-19 constitutes a public health emergency under the PREP Act. *See* Amazon SOF ¶ 19. Further, as explained below, there is no genuine dispute that Amazon meets all the requirements for PREP Act immunity in this case: the ICI camera systems are "covered countermeasures"; Amazon is a "covered person" under the PREP Act; and Ms. Redd's claims have a causal relationship to Amazon's use of the ICI camera systems. Amazon is therefore immune to Ms. Redd's claims.

      **a. The ICI cameras are covered countermeasures.**

The first question is whether the ICI camera systems qualify as covered countermeasures under the PREP Act. The answer is "yes." Covered countermeasures include "qualified pandemic or epidemic product[s]," 42 U.S.C. § 247d-6d(i)(1)(A), which, in turn, include any devices that are both (1) procured or used to "mitigate" or "prevent" a pandemic or epidemic, or to "limit the harm such pandemic or epidemic might otherwise cause," and (2) approved or authorized by the federal Food and Drug Administration ("FDA"). 42 U.S.C. §§ 247d-6d(i)(7)(A)(i)(I)-(II), 247d-6d(i)(7)(B)(i). The Secretary has further defined "covered countermeasures" to include any device or product used to reduce the harms and transmission of COVID-19, along with "all components and constituent materials of any such product." U.S. Dep't of Health & Human Svcs., Second Amendment to Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 35,100-01, 35,102 (June 8, 2020).

7

The ICI camera systems that Amazon used at MDW7, where Ms. Redd worked during the relevant time period, indisputably meet those requirements.

**First,** Amazon used the ICI camera systems to screen employees, including Ms. Redd, for elevated temperatures. *See* Amazon SOF ¶¶ 24-25. And Amazon did so to mitigate, prevent, and limit the harms of COVID-19. *See id.* ¶ 25. Indeed, Ms. Redd herself admits that Amazon used the ICI camera systems to check her temperature; that Amazon checked her temperature to reduce transmission of COVID-19; and that Amazon sought to implement its temperature-screening procedures in a way that complied with public health guidance. *See, e.g.*, *id.* ¶ 26.

**Second,** the ICI cameras used at MDW7 were cleared by the FDA under the federal Food, Drug, and Cosmetic Act ("FDCA"), as required by the PREP Act. Specifically, the FDA cleared the cameras as Class 1 medical device "telethermographic systems" pursuant to Section 510(k) of the FDCA as meeting the definition of a "device" under Section 201(h) of the FDCA. *See id.* ¶ 37.

In short, the ICI camera systems are covered countermeasures, and the record leaves no room for dispute on that point. The first requirement for PREP Act immunity is therefore met.[4]

**b. Amazon is a covered person.**

The second question is whether Amazon qualifies as a covered person for purposes of Ms. Redd's claims. Here again, the answer is "yes."

"[T]he term 'covered person' includes a broad range of individuals and organizations." U.S. Dep't of Health & Human Servs., Off. Of Gen Couns., Advisory Op. 20-04 at 2 (Oct. 22,

---

[4] Further, Amazon would be entitled to immunity even if the ICI camera systems did not plainly qualify as covered countermeasures. A person who complies with the PREP Act and the Secretary's declarations under the PREP Act is entitled to immunity—even if the countermeasure at issue is not a *covered* countermeasure—if that person "reasonably could have believed that the product was a covered countermeasure." U.S. Dep't of Health & Human Servs., Off. Of Gen Couns., Advisory Op. 20-04 at 2 (Oct. 22, 2020), as modified (Oct. 23, 2020) (Spear Decl., Ex. 13). Here, Amazon reasonably could have believed that the ICI camera systems were covered countermeasures, including because (1) public health authorities encouraged the use of thermal cameras for temperature screening to combat COVID-19, *see* Amazon SOF ¶¶ 22-23, and (2) documentation regarding the ICI camera systems indicated that the systems were approved by the FDA, *see id.* ¶ 68.

2020), as modified (Oct. 23, 2020) (Spear Decl., Ex. 13). In particular, both (1) "program planner[s]" and (2) "qualified person[s]" who "administer[]" covered countermeasures are covered persons. 42 U.S.C. § 247d-6d(i)(2)(B)(iii), (iv). Amazon fits comfortably in both categories.[5]

      **First,** Amazon acted as a "program planner." "Program planner" means any person who "supervised or administered a program with respect to the administration, dispensing, distribution, provision, or use" of a covered countermeasure, including a person who "provides a facility to administer or use a covered countermeasure." 42 U.S.C. § 247d-6d(i)(6). That is precisely what Amazon did here: It "supervised" and "administered" the "provision" and "use" of the ICI camera systems, and it "provide[d] a facility" to "administer" and "use" those systems at MDW7, where Ms. Redd encountered the systems. *See* Amazon SOF ¶¶ 24-50.

      **Second,** Amazon acted as a "qualified person." "The term 'qualified' person" means, among other things, "a person within a category of persons so identified in a declaration by the Secretary." 42 U.S.C. § 247d-6d(i)(8)(B). The Secretary has identified as qualified persons "[a]ny person authorized in accordance with the public health and medical emergency response of [applicable public health authorities] . . . to . . . administer, deliver, [or] distribute . . . Covered Countermeasures, and their officials, agents, employees, contractors and volunteers." U.S. Dep't of Health & Human Svcs., Fourth Amendment to the Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19 and Republication of the Declaration, 85 Fed. Reg. 79190-01, 79,195 (Dec. 9, 2020). Amazon qualifies under that definition because multiple authorities authorized or encouraged the use of temperature screening, including with thermal cameras. *See* Amazon SOF ¶¶ 22-23.[6]

---

[5] Additionally, as "official[s], agent[s], or employee[s]" of an entity that is a program planner and a qualified person (namely, Amazon), the Amazon personnel who helped plan and administer the temperature checks at MDW7 are covered persons entitled to PREP Act immunity in their own right. 42 U.S.C. § 247d-6d(i)(2)(B)(v).

[6] Here too, even if there is some ambiguity as to whether the PREP Act applies, Amazon is still entitled to immunity. A person who complies with the PREP Act and the Secretary's declarations under the PREP Act is entitled to immunity—even if that person is not a covered

### c. Redd's claims have a causal relationship to Amazon's use of the ICI cameras.

The third and final question is whether there is a causal relationship between Ms. Redd's claims and Amazon's use of the ICI camera systems. *See* 42 U.S.C. § 247d-6d(a)(1) (providing immunity to "all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use . . . of a covered countermeasure"). Again, the answer is "yes."

Ms. Redd claims that Amazon used the ICI camera systems to collect her biometric data and, as a result, she "lost the right to control the collection, use, and storage of [her] biometric identifiers and information and [was] exposed to ongoing, serious, and irreversible privacy risks." SAC ¶ 9. Her claims and alleged injuries are therefore based exclusively on Amazon's use of the ICI camera systems, which are covered countermeasures. It follows that Ms. Redd's claims are barred by the PREP Act, because the PREP Act expressly bars all claims "related to, and aris[ing] out of" covered countermeasures, including "COVID-19 diagnostic counter measure[s]." *Mills v. Hartford Health Care Corp.*, No. HHDCV206134761S, 2021 WL 4895676, at *4 (Conn. Super. Ct. Sept. 27, 2021); *see also* U.S. Dep't of Health & Human Servs., Off. Of Gen Couns., Advisory Op. 21-01, at 3 (Jan. 8, 2021) (Spear Decl., Ex. 14) (PREP Act immunity "extends . . . to anything 'relating to' the administration of a covered countermeasure").

To sum up: Amazon meets all the requirements for PREP Act immunity in this case. Thus, even if Ms. Redd could point to some evidence in support of her BIPA claims—which, as

---

person—if that person "reasonably could have believed that the person was a covered person." U.S. Dep't of Health & Human Servs., Advisory Op. 20-04 at 2 (Oct. 22, 2020), as modified (Oct. 23, 2020) (Spear Decl., Ex. 13). Here, Amazon reasonably could have believed that it was a covered person for many reasons. The Secretary has made clear that "private sector employer[s]," like Amazon, may be covered persons when they adopt measures to combat COVID-19. U.S. Dep't of Health & Human Svcs., Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15,198, 15,199, 2020 WL 1245193 (Mar. 17, 2020). Moreover, multiple public health authorities authorized, approved, or encouraged the use of temperature screenings to slow the spread of COVID-19, *see* Amazon SOF ¶¶ 22-23; the ICI camera systems were approved by the FDA, *see id.* ¶ 37; and documentation regarding the ICI camera systems indicated that the systems were approved by the FDA, *see* Amazon SOF ¶ 68.

explained below, she cannot do—it would not matter. The PREP Act would still bar her claims, and Amazon would still be entitled to summary judgment.

**2. The PREP Act preempts BIPA in this case.**

In addition or alternatively, the Court should grant summary judgment to Amazon because the PREP Act preempts BIPA in this context.

Under the Supremacy Clause of the U.S. Constitution, "state laws that interfere with, or are contrary to the laws of congress, made in pursuance of the constitution are invalid," i.e., preempted. *Aux Sable Liquid Prods. v. Murphy*, 526 F.3d 1028, 1032-33 (7th Cir. 2008) (internal quotation marks and citations omitted). "Preemption can take on three different forms: express preemption, field preemption, and conflict preemption." *Id.* "Express preemption occurs when a federal statute explicitly states that it overrides state or local law." *Id*.

Here, the PREP Act expressly overrides state law. *See* 42 U.S.C. § 247d-6d(b)(8) ("[N]o State . . . may establish, enforce, or continue in effect . . . any provision of law or legal requirement" that is (1) "different from, or is in conflict with" the PREP Act, and (2) "relates to" the "use" or "administration" of a "covered countermeasure"). And that express preemption plainly extends to Ms. Redd's claims. As interpreted by Ms. Redd, BIPA is "different from" and "in conflict" with the PREP Act because BIPA would impose additional requirements— including, for example, notice and consent requirements—on Amazon's use of the ICI camera systems. *See Parker v. St. Lawrence Cnty. Pub. Health Dep't*, 102 A.D.3d 140, 143-44 (N.Y. App. Div. 2012) ("[W]e conclude that Congress intended [the PREP Act] to preempt all state law tort claims . . . , *including one based upon a defendant's failure to obtain consent*.") (emphasis added). Ms. Redd's reading of BIPA is also "different from" and "in conflict" with the PREP Act because it would provide a private right of action for claims relating to the use of covered countermeasures—a result the PREP Act forbids. *See* 42 U.S.C. § 247d-6d(a)(1); *cf. Farwell v. Google LLC*, No. 21-cv-01122, 2022 WL 1568361, at *5 (C.D. Ill. Mar. 31, 2022) (COPPA preempted BIPA because COPPA "provides for no private right of action, whereas BIPA does so explicitly"). Ms. Redd's BIPA claims are therefore preempted.

**B. Amazon Did Not Collect, Possess, or Disclose Ms. Redd's Biometric Data**

Even if the PREP Act is inapplicable, Amazon is still entitled to summary judgment for a more fundamental reason: there is simply no evidence to support Ms. Redd's claims.

Summary judgment is proper when "there is an absence of evidence to support the nonmoving party's case." *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013). That is exactly the situation here. After extensive party and non-party discovery, including voluminous document productions, Ms. Redd cannot point to *any* evidence that Amazon captured her biometric data, let alone "evidence on which [a] jury could reasonably find" in her favor. *Stephens*, 569 F.3d at 786. Indeed, there is no evidence that the ICI camera systems relied on any form of biometric measurements or analysis at all, much less the specific types of biometric data governed by BIPA. Nor is there any evidence that Amazon collected, possessed, or disclosed any BIPA-covered data—all essential elements of Ms. Redd's claims. Amazon is therefore entitled to summary judgment because a "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

**1. There is no evidence that the ICI camera systems performed "facial recognition," or any other form of facial, retina, or iris measurement or analysis, on Ms. Redd.**

The gravamen of Ms. Redd's complaint is that the ICI camera systems used at MDW7 were "facial recognition devices," and Amazon used those "facial recognition devices" to collect, possess, and later disclose biometric data about her. SAC ¶¶ 5-7, 43. The Court credited those allegations at the motion to dismiss stage. *See generally* Dkt. 51. At the summary judgment stage, however, Ms. Redd must do more than level unsupported allegations based on "information and belief," SAC ¶ 6; she must come forward with competent and sufficient evidence in support of those allegations. That she cannot do.

For starters, there is no expert testimony that the ICI camera systems were used as "facial recognition devices," or to perform retina, iris, or any other kind of biometric measurement or analysis. Ms. Redd's conjecture is unsupported by any expert testimony at all.

Extensive fact discovery confirmed the absence of factual support for Ms. Redd's claims. Had there been any such evidence, the record would reflect as much. In fact, there is none. Ms. Redd cannot point to a single example of anything resembling biometric measurements or analyses related to her, much less scans of her "facial geometry," retinas, and irises. SAC ¶ 5. Nor is that surprising. Again, contrary to Ms. Redd's allegations, Amazon did not configure the ICI camera systems to perform facial recognition, or to collect or store any personal information, for that matter—biometric or otherwise. *See* Amazon SOF ¶¶ 52-55.

Deposition testimony is no more helpful to Ms. Redd. She deposed two Amazon witnesses: John Herendeen and Lucas Power. Neither testified that Amazon's thermal cameras used facial recognition. To the contrary, both testified that they had no reason to believe that Amazon's devices—including the ICI camera systems at MDW7—used facial recognition technology or performed biometric measurements or analyses of any kind. *See id*. ¶¶ 59-60.

Finally, Ms. Redd's deposition testimony further highlights the absolute lack of evidence for her claims. For example, when asked to explain why she believed the ICI camera systems were "facial recognition devices," Ms. Redd had no answer. She could not point to anything she had observed, anything she had read, or anything she had been told supporting that belief. All she could muster was a smattering of irrelevant facts, including, for example, the fact that Amazon hung "white plastic on the walls" of the screening area at MDW7. *Id.* ¶ 63 (Q: . . . "So I think what you're saying is, just sort of the general experience of how things were set up, that's what made you think that biometric data was being collected; is that fair?" A: "That's fair."). Similarly, Mr. Jerinic—the original named plaintiff—admitted in his deposition he had no reason to believe Amazon used facial recognition technology. *See id*. ¶ 66.

In short, the record is devoid of any evidence supporting the most basic assertion at the heart of Ms. Redd's claims, namely, that the ICI camera systems were used as "facial recognition devices." SAC ¶ 6. Ms. Redd cannot point to any evidence in support of that theory. And she most certainly cannot point to any evidence that Amazon used facial recognition technology, or generated any form of biometric measurements or analysis, *about her*. Amazon is therefore

entitled to summary judgment. *See, e.g.*, *Gullen v. Facebook, Inc.*, No. 16-CV-00937, 2018 WL 1609337, at *2 (N.D. Cal. Apr. 3, 2018) (granting summary judgment in a BIPA case where, as here, plaintiff failed to offer any evidence suggesting that Facebook "appl[ied] facial recognition" technology to images of plaintiff), *aff'd*, 772 F. App'x 481 (9th Cir. 2019).[7]

## 2. There is no evidence that the ICI camera systems collected, generated, or relied on "biometric identifiers" or "biometric information."

Even if Ms. Redd could show the ICI camera systems performed "facial recognition" or some other kind of biometric analysis on her (which, as explained above, she cannot do), that would not be enough. BIPA does not apply broadly to "facial recognition," or to every form of biometric measurement or analysis. Rather, it applies only to the collection and use of specific types of data, namely, "biometric identifiers" and "biometric information." 740 ILCS § 14/10. Ms. Redd must therefore point to evidence that Amazon used the ICI camera systems to collect, possess, and disclose those specific types of BIPA-covered data about her. She cannot.

A "biometric identifier" consists of "biology-based measurements ('biometric') . . . used to identify a person ('identifier')." *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1095 (N.D. Ill. 2017). "In other words, a biometric identifier is a unique personal feature that can be used to *identify a person*." *Carpenter v. McDonald's Corp.*, 580 F. Supp. 3d 512, 515 (N.D. Ill. 2022) (emphasis added). Biometric information means "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier *used to*

---

[7] In an effort to avoid summary judgment, Ms. Redd may point to a few stray documents in the record suggesting that some thermal cameras used for temperature screening made use of "face recognition" functionality. Those documents do not create a genuine dispute of material fact for a variety of reasons, including because there is no evidence in the record that *any* technology used by Amazon, regardless of how its functionality was described internally, *actually* resulted in the collection, storage, or use of any BIPA-covered data, let alone BIPA-covered data about Ms. Redd. And that fundamental element of Ms. Redd's claims simply cannot be assumed away. *See* Pls.' Supp. Br. in Support of Prelim. Approval of Class Action Settlement, *In re Facebook Biometric Information Privacy Litig.*, No. 3:15-cv-03747-JD (N.D. Cal. July 9, 2020) (Dkt. 465) (whether technology implicates BIPA-covered data is "a highly complex and technical topic that combines facial recognition, computer vision and algorithmic machine learning concepts"). That is particularly true given that the undisputed record evidence confirms that, while the ICI camera systems may have offered facial recognition functionality, Amazon intentionally configured the systems to not use it.

*identify an individual*." 740 ILCS § 14/10 (emphasis added). Thus, to avoid summary judgment, Ms. Redd must come forward with specific evidence showing that the ICI camera systems generated or relied on data about her that could be used to identify her.

But there is no such evidence. Again, there is not a single example in the record of *any* biometric measurements or analysis regarding Ms. Redd, much less measurements or analysis that were used to identify her or that could have been used to identify her. At most, there is evidence that the ICI camera systems used simple bounding boxes to estimate the location of employees' heads in the cameras' frames. *See* Amazon SOF ¶¶ 42-48. But there is zero evidence that the bounding boxes generated or captured biometric identifiers in the form of face scans— i.e., "unique numerical representation[s] of [face] shape or geometry" that could have been used to identify anyone. *Sosa v. Onfido, Inc.*, No. 20-cv-4247, 2022 WL 1211506, at *9 (N.D. Ill. Apr. 25, 2022). The fact that employees were allowed to wear face masks during the screenings further undercuts any inference that the ICI camera systems were used or could have been used to obtain detailed, biologically unique information about employees' faces. *See* Amazon SOF ¶ 28. Nor is there any evidence that the bounding boxes generated or captured any other kind of "biologically unique" data, such as retina or iris scans, that could have been used to identify anyone, including Ms. Redd. SAC ¶ 27. It follows that Ms. Redd cannot "establish the existence of an element essential to [her] case, one on which [s]he would bear the burden of proof at trial": namely, Amazon's alleged collection and use of *BIPA-covered data* about her. *Cervantes v. Ardagh Grp.*, 914 F.3d 560, 564 (7th Cir. 2019). Amazon is entitled to summary judgment for that reason alone.

**3. There is no evidence that Amazon "collected," "possessed," or "disclosed" Ms. Redd's biometric data.**

Finally, to avoid summary judgment, Ms. Redd must do more than show that the ICI camera systems implicated BIPA-covered data; she must also point to evidence supporting the other elements of her BIPA claims. She cannot meet that burden, either.

15

**First,** to avoid summary judgment on her claim under Section 15(b), Ms. Redd must point to evidence that Amazon *collected* her biometric data.[8] That means she must point to evidence that Amazon took "an active step to collect, capture, purchase, or otherwise obtain [her] biometric data." *Jacobs v. Hanwha Techwin Am., Inc.*, No. 21 C 866, 2021 WL 3172967, at *2 (N.D. Ill. July 27, 2021). But there is no such evidence. Again, there is not a single example of biometric data about Ms. Redd in the record. And nothing in the record even hints at affirmative efforts by Amazon to obtain Ms. Redd's biometric data. To the contrary, as noted above, the record shows that Amazon deliberately designed the ICI camera systems to *avoid* the collection of employees' personal information, including biometric data. *See* Amazon SOF ¶¶ 52-55.

**Second,** to avoid summary judgment on her claim under Section 15(a), Ms. Redd must point to evidence that Amazon *possessed* her biometric data. *See* 740 ILCS § 14/15(a) (requiring companies "in possession" of biometric data to, among other things, publish a retention and deletion policy). But again, there is no such evidence. There is no evidence that Amazon collected Ms. Redd's biometric data via the ICI camera systems, or that Amazon otherwise came into possession of Ms. Redd's data. Nor is there any indirect evidence from which a reasonable jury could infer possession. For example, there is no evidence of any database in which Amazon stored data from the ICI camera systems. *See* Amazon SOF ¶ 53 (Herendeen Dep. at 122:5-8) (Q: "Was there any database where information from the ICI system was stored at?" A: "No, there was not, not to my awareness."). And there is certainly no evidence of a database used to store *biometric* data, let alone biometric data *about Ms. Redd*. Indeed, Ms. Redd admitted in her deposition that she had no factual basis for her belief that Amazon stored her biometric data. *See* Amazon SOF ¶ 64 (Q: "Okay. So you assume that Amazon kept that information about you, meaning your name, associated with biometric data associated with your temperature, and you think that's true because you think, in general, Amazon keeps a record on everyone; is that fair?"

---

[8] Section 15(b) applies to private entities that "collect, capture, purchase, receive through trade, or otherwise obtain" biometric data. 740 ILCS § 14/15(b). For brevity, Amazon uses the word "collect" to encompass all the operative terms.

A: "I'm not saying in general. It is the truth."). In short, there is no actual evidence Amazon "exercised control over plaintiff's data or otherwise held plaintiff's data at its disposal." *Jacobs*, 2021 WL 3172967, at \*3. Thus, here again, Ms. Redd cannot "establish the existence of an element essential to [her] case." *Cervantes*, 914 F.3d at 564.

      **Third,** to avoid summary judgment on her claim under Section 15(d), Ms. Redd must point to evidence that Amazon *disclosed* her biometric data.[9] But just as there is no evidence that Amazon collected or possessed Ms. Redd's biometric data, so, too, there is no evidence that Amazon disclosed any such data. Indeed, not one document, and not one page of testimony, suggests Amazon disclosed data about Ms. Redd to any other person or entity, and Ms. Redd effectively admitted in her deposition that her allegations of disclosure are based wholly on speculation. *See* Amazon SOF ¶ 65 (Q: "So Amazon works with a lot of vendors and has a lot of subsidiaries, and so, based on those facts, you just assume that Amazon must share your biometric data with those vendors and subsidiaries?" A: . . . "Yes."). That failure of proof dooms Ms. Redd's Section 15(d) claim. *Cf. Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 627 (7th Cir. 2014) (affirming summary judgment where, as here, plaintiff failed to come forward with any evidence regarding what private information defendant allegedly disclosed, including why or when defendant disclosed it); *LiiON, LLC v. Vertiv Grp. Corp.*, No. 18-CV-6133, 2021 WL 4963610, at \*7 (N.D. Ill. Oct. 26, 2021) (granting summary judgment where plaintiff "ma[de] no effort to show" that defendant improperly used or disclosed trade secrets), *appeal dismissed*, No. 21-3202, 2022 WL 1656604 (7th Cir. Apr. 27, 2022).

## C. Ms. Redd Is Not Entitled to Any Remedy

      Even if Ms. Redd could somehow manufacture a genuine dispute of material fact as to whether Amazon collected, possessed, or disclosed biometric data about her (she cannot), the record is devoid of evidence that would entitle her to any relief under BIPA. Amazon is entitled to summary judgment on that ground as well.

---

[9] Section 15(d) provides that companies in possession of biometric data may not "disclose, redisclose, or otherwise disseminate" such data. 740 ILCS 14/15(d). Again, for brevity, Amazon uses the word "disclose" to encompass all the operative terms.

1.  **Ms. Redd is not entitled to statutory damages.**

BIPA authorizes statutory damages only if "a private entity . . . negligently" or "intentionally or recklessly violates" its prohibitions. Thus, a defendant can "avoid liability by taking reasonable steps" to comply. *Rivera*, 238 F. Supp. 3d at 1104 (N.D. Ill. 2017). Here, Amazon took reasonable steps to avoid collecting, possessing, or disclosing employee data, including biometric data, in connection with its use of the ICI camera systems. Those steps included (1) not enabling facial recognition features; (2) configuring the ICI camera systems not to retain data; (3) configuring the ICI camera systems to be "closed" systems; and (4) configuring the laptops connected to the ICI camera systems so that they could not be connected to the Amazon network. Ms. Redd has adduced no evidence of other "reasonable" steps Amazon could have or should have taken to avoid collecting her biometric data. She therefore cannot show that Amazon acted negligently. *See* Ill. Pattern Jury Instr. 10.01 (describing "negligence" as "the failure to do something which a reasonably careful person who do, or the doing of something which a reasonably careful person would not, under circumstances similar to those shown by the evidence"). And she certainly cannot point to any evidence that Amazon violated BIPA "willfully" or "recklessly." *See Wells v. IFR Eng'g Co.*, 247 Ill. App. 3d 43, 46 (1993) (for "conduct to be intentional, a person must commit the act and he must also intend to produce the harm"; "reckless" conduct involves "commit[ing] an act" while "realiz[ing] there is a strong probability that harm might result").

Ms. Redd also is not entitled to statutory damages because there is no evidence she suffered any harm as a result of the alleged violation. "[L]iquidated damages," like the statutory damages provided by BIPA, "are intended to be an estimate of actual damages." *Sterk*, 672 F.3d at 538. Here, the record makes clear Ms. Redd suffered no harm whatsoever. Under those circumstances, awarding statutory damages would put BIPA "at odds with the traditional understanding that tort recovery requires not only wrongful act plus causation reaching to the plaintiff, but proof of some harm for which damages can reasonably be assessed." *Doe v. Chao*, 540 U.S. 614, 621 (2004).

### 2. Ms. Redd is not entitled to injunctive relief.

Ms. Redd also is not entitled to injunctive relief under BIPA. A plaintiff may obtain injunctive relief only after showing "(1) [she] has suffered an irreparable injury; (2) legal remedies, such as damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and the defendant, an equitable remedy is warranted; and (4) the public interest would not be disserved by a permanent injunction." *LAJIM, LLC v. Gen. Elec. Co.*, No. 13-CV-50348, 2017 WL 3922139, at *2 (N.D. Ill. Sept. 7, 2017), *aff'd*, 917 F.3d 933 (7th Cir. 2019). Ms. Redd can point to no evidence sufficient to create a genuine dispute of material fact as to any of those elements. In particular, there is no evidence suggesting that Ms. Redd has incurred any injury, much less an "irreparable" one. Her theory of injunctive relief fails for this reason alone.

Further, it is undisputed that Amazon no longer uses the ICI camera systems or otherwise conducts temperature checks at the MDW7 facility (or at the facility where Ms. Redd currently works). *See* Amazon SOF ¶ 67. As a result, Ms. Redd's "prospects of future injury" are "purely speculative," such that she "lacks the requisite personal stake in the outcome of this litigation to establish standing to seek injunctive relief." *Sierakowski v. Ryan*, 223 F.3d 440, 444 (7th Cir. 2000). She is not entitled to injunctive relief for that reason, as well.

### 3. Ms. Redd is not entitled to declaratory relief.

Finally, Ms. Redd's request for declaratory relief should be rejected for two reasons. As an initial matter, there is zero evidence that Amazon violated BIPA, and therefore zero evidence that Ms. Redd is entitled to declarative relief. Further, the Court could and should reject Ms. Redd's request for declaratory relief as duplicative of her other requests for relief under BIPA. *See, e.g., Levy v. West Coast Life Ins. Co.*, 44 F.4th 621 (7th Cir. 2022) (no abuse of discretion in dismissing as duplicative declaratory judgment claim that was substantively identical to a breach of contract claim).

## **CONCLUSION**

This case never should have been filed, and it shows. Ms. Redd cannot point to any evidence in support of her claims. And even if she could, it would not matter because the PREP Act bars her claims and because she is not entitled to any remedies under BIPA.

The Court should grant summary judgment in Amazon's favor.

DATED:  September 23, 2022        AMAZON.COM, INC. AND
AMAZON.COM SERVICES LLC F/K/A
AMAZON.COM, LLC


By:  */s/ Ryan Spear*
     Ryan Spear

**PERKINS COIE LLP**
Susan D. Fahringer
SFahringer@perkinscoie.com
Ryan Spear
RSpear@perkinscoie.com
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000

Debra R. Bernard, Bar No. 6191217
DBernard@perkinscoie.com
Kathleen A. Stetsko, Bar No. 6297704
KStetsko@perkinscoie.com
110 North Wacker Drive, Suite 3400
Chicago, Illinois 60606-1511
Telephone: 312.324.8400
Facsimile: 312.324.9400