**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **CYNTHIA REDD, individually and on behalf of all others similarly situated,** | ) ) ) | |
| **Plaintiffs,** | ) ) | **Case No. 1-20-cv-06485** |
| **v.** | ) ) | **Hon. Nancy L. Maldonado** |
| **AMAZON.COM, INC. and AMAZON.COM LLC,** | ) ) ) | |
| **Defendants.** | ) | |

<u>**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**</u>

Ryan F. Stephan
Catherine Mitchell
**STEPHAN ZOURAS, LLP**
100 N. Riverside Plaza, Suite 2150
Chicago, Illinois 60606
(312) 233-1550
(312) 233-1560 *f*
rstephan@stephanzouras.com
cmitchell@stephanzouras.com

***Attorneys for Plaintiff and the
Putative Class Members***

# TABLE OF CONTENTS

TABLE OF CONTENTS .............................................................................................. i

TABLE OF AUTHORITIES ...................................................................................... ii

I.     INTRODUCTION ............................................................................................. 1

II.    RELEVANT PROCEDURAL HISTORY ........................................................ 3

III.   LEGAL STANDARD ...................................................................................... 5

    A.  Summary Judgment Standard ................................................................. 5

    B.  The PREP Act ......................................................................................... 6

IV.   ARGUMENT .................................................................................................... 6

    A.  Amazon Fails To Establish That it is Immune From Liability For BIPA Violations Under The PREP Act. ....................................................... 6

        1.  Plaintiff's Claims For Statutory Violations of BIPA Are Not "Claims For Loss" Under The PREP Act. ........................... 6

        2.  Plaintiff's BIPA Claims Are Not "Causally Related" to Defendant's Use of ICI Cameras, Devices and Software ................ 9

    B.  Plaintiff's Claims For Statutory Violations of BIPA Are Not Expressly Preempted by The PREP Act. ......................................................... 11

    C.  Amazon Fails to Meet Its Burden to Demonstrate There Is No Genuine Dispute of Material Fact That It Did Not Capture, Collect, or Otherwise Obtain Plaintiff's Biometric Identifiers and Biometric Information. ......................................... 14

    D.  Plaintiff is Entitled to Relief Based on Amazon's BIPA Violations. ........... 18

V.    CONCLUSION ............................................................................................... 20

# TABLE OF AUTHORITIES

## Cases

*Bradenberg v. Meridian Senior Living, LLC*,
  564 F. Supp. 3d 627 (C.D. Ill. 2021) ........................................................ 13

*Bryant v. Compass Grp. USA, Inc.*,
  958 F.3d 617 (7th Cir. 2020) ...................................................................... 7

*C.Y. Wholesale Inc. v. Holcomb*,
  965 F.3d 541 (7th Cir. 2020) .................................................................... 11

*Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*,
  467 U.S. 837 (1984) .................................................................................. 11

*Crumpton v. Octapharma Plasma, Inc.*,
  513 F. Supp. 3d 1006 (N.D. Ill. 2021) ..................................................... 13

*CSX Transp., Inc. v. Easterwood*,
  507 U.S. 658 (1993) .................................................................................. 11

*Farwell v. Google*,
  2022 WL 1568361 (C.D. Ill. Mar. 31, 2022) ........................................... 13

*Haro v. Kaiser Found. Hosps.*,
  2020 WL 5291014 (C.D. Cal. Sept. 3, 2020) ....................................... 9, 10

*Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*,
  778 F.3d 593 (7th Cir. 2015) ...................................................................... 5

*James v. Hale*,
  959 F.3d 307 (7th Cir. 2020) .................................................................... 18

*Johnson v. Hix Wrecker Serv., Inc.*,
  651 F.3d 658 (7th Cir. 2011) ...................................................................... 6

*Mackey v. Tower Hill Rehab., Ltd. Liab. Co.*,
  569 F. Supp. 3d 740 (N.D. Ill. Nov. 1, 2021) ..................................... 6, 11

*Martin v. Petersen Health Operations, LLC*,
  2021 WL 4313604 (C.D. Ill. Sept. 22, 2021) ............................................. 9

*Martin v. Petersen Health Operations, LLC*,
  37 F.4th 1210 (7th Cir. 2022) ..................................................................... 9

*McDonald v. Symphony Bronzeville Park, LLC*,
  193 N.E.3d 1253 (Ill. 2022) ........................................................................ 8

*Medtronic, Inc. v. Lohr*,
  518 U.S. 470 (1996) .................................................................................. 11

*Mintz v. Mathers Fund, Inc.*,
  463 F.2d 495 (7th Cir. 1972) ...................................................................... 6

*Nichols Motorcycle Supply, Inc. v. Dunlop Tire Corp.*,
  1994 WL 698486 (N.D. Ill. Dec. 12, 1994) ............................................... 7

*Parker v. St. Lawrence Cnty. Pub. Health Dep't*,
  102 A.D. 3d 140 (N.Y.App. Div. 2012) ................................................... 13

*Peoples Outfitting Co. v. Gen. Elec. Credit Corp.*,
  549 F.2d 42 (7th Cir. 1977) ........................................................................ 6

*Quarles v. Pret A Manger (USA) Ltd.*,
   2021 WL 1614518 (N.D. Ill. Apr. 26, 2021) ...................................................... 8
*Rosenbach v. Six Flags Ent. Corp.*,
   129 N.E. 3d 1197 (Ill. Sup. 2019) ...................................................... 8, 19
*Ruiz v. ConAgra Foods Packaged Foods, LLC*,
   2021 WL 3056275 (E.D. Wis. July 20, 2021)...................................................... 6
*Schlaf v. Safeguard Prop., LLC*,
   899 F.3d 459 (7th Cir. 2018)...................................................... 5
*Shreffler v. City of Kankakee*,
   2021 WL 6200763 (C.D. Ill. Nov. 29, 2021) ...................................................... 9
*Spierer v. Rossman*,
   798 F.3d 502 (7th Cir. 2015)...................................................... 5
*U.S. v. Republic Steel Corp.*,
   286 F.2d 875 (7th Cir. 1961)...................................................... 7
*Vaughan v. Biomat USA, Inc.*,
   2022 WL 4329094 (N.D. Ill. Sept. 19, 2022)...................................................... 8
*Williams v. Federal Deposit Ins. Corp.*,
   2009 WL 1209029 (N.D. Ill. Apr. 30, 2009) ...................................................... 7
*Williams v. Fleming*,
   597 F.3d 820 (7th Cir. 2010)...................................................... 7

## Statutes

21 U.S.C. § 360k...................................................... 12
42 U.S.C. §§ 247d...................................................... passim
740 ILCS 14/20...................................................... 19

## Other Authorities

U.S. Dep't of Health & Human Servs., Off. Of Gen Couns.,
   Advisory Op. 20-04, at 3 (Oct. 23, 2020) ...................................................... 7

## Rules

Fed. R. Civ. P. 56(a) ...................................................... 5, 6

## I. INTRODUCTION

This case is about whether Amazon—a multi-billion-dollar technology and data collection conglomerate that focuses on artificial intelligence ("AI") and cloud computing—collected Named Plaintiff's and other workers' biometric identifiers (*i.e.*, scans of facial geometry) and biometric information (collectively referred to herein as "biometric data") without complying with the Illinois Biometric Information Privacy Act ("BIPA"). ████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████. *See* Plaintiff's Rule 56(a) Statement of Additional Facts ("PSOF") ¶¶ 1-4, 7. Nor does Amazon dispute that it took *zero* steps to comply with BIPA prior to collecting and sharing Plaintiff's biometric data.

Rather, Amazon claims it does not have to comply with BIPA, because under the Public Readiness and Emergency Preparedness ("PREP") Act, its temperature scanning procedure was a COVID-19 countermeasure and Plaintiff's claims for BIPA violations are "claims for loss" as defined by the PREP Act because they relate to the temperature scanning process. However, the PREP Act only provides immunity for certain "claims for loss" specifically enumerated in the statute—none of which mention or involve BIPA. And Plaintiff is not claiming Amazon's temperature scanning procedure itself is per se unlawful; rather, Plaintiff's claims stem from Amazon's failure to provide informed consent and comply with BIPA prior to collecting, using, and disclosing her biometric data. In other words, Amazon does not meet the first requirement for PREP Act immunity to apply.

Amazon also moves for summary judgment without any expert analysis or testimony on the actual capability and functionality of its own systems and based solely on the self-serving

testimony of three employees who have little, if any, technical knowledge about the functionality of Amazon's AI-powered temperature scanning system, and who conveniently assert without any evidentiary support that facial recognition technology was not enabled or used by Defendants. Amazon's unsubstantiated representations, however, are directly contradicted by the record evidence. For example, documents show that Amazon's systems function solely by utilizing facial recognition technology to scan faces to collect a temperature reading, ███████████████ ████████████████████████████████████████████████████████ ███████████████. PSOF ¶ 30. The test under BIPA is whether Amazon captured, collected and/or obtained Plaintiff's biometric data in the first instance. Here, the fact that ████████ ████████████████████████████████████████████████████████ ████████████████████████████ if not determinative in and of itself, at the very least raises questions of fact as to whether Amazon *collected* Plaintiff's biometric identifiers and biometric information. PSOF ¶¶ 1-4, 7.

Lastly, Amazon argues that Plaintiff is not entitled to any remedy, statutory or otherwise, because she suffered no harm and Amazon no longer uses the temperature scanning system. Not so. First, Plaintiff need only establish that Amazon violated one of BIPA's Section 15 requirements to show liability, and then, to determine the amount of statutory damages they are entitled to, Plaintiff must show that Amazon violated BIPA with either a "negligent" or "reckless" state of mind. Amazon's willful ignorance of BIPA, despite the dozens of pending lawsuits against it for BIPA violations as well as its known implementation of biometric temperature scanning systems, establishes that its behavior was at the very least negligent, if not reckless. Amazon, like everyone else, is presumed to know the law—it cannot claim ignorance to escape BIPA's statutory damages.

Summary judgment is an extreme remedy and carries with it an extremely high burden. Amazon attempts to shirk liability by misapplying the PREP Act and where that fails, argues *Plaintiff*, the non-movant, has no evidence in the record to support her claims. Amazon's arguments ignore its own documents and severely miss the mark. Because Amazon fails to satisfy its significant burden to establish the absence of genuine issues of material fact and that summary judgement should be decided in its favor, Defendants' Motion should be denied.

## II.    RELEVANT PROCEDURAL HISTORY

This class action case was first filed on September 28, 2020, in the Circuit Court of Cook County, Illinois. Dkt. 1-1. On October 30, 2020, Defendants removed this matter to the United States District Court for the Northern District of Illinois. Dkt. 1. The Complaint has since been amended twice, for the sole purpose of substituting the Named Plaintiff. Dkt. 33, 55. In the operative Second Amended Complaint, Plaintiff Redd alleges that Defendants improperly collected, obtained, used, stored and disseminated her biometric identifiers and biometric information (referred to herein as "biometric data") in violation of BIPA. Dkt. 55. Specifically, Plaintiff alleges that Defendants utilized biometric temperature scanning cameras and facial recognition software to scan her and other workers' facial geometry prior to entering the workplace, and that Defendants failed to comply with the requirements of BIPA prior to collecting, using, and disseminating their biometric data. *Id.* at ¶¶ 4-7, 13, 33-37, 43-53, 71-76, 79-85, 88-93). Defendants' Motion to Dismiss was denied and it filed an Answer to Plaintiff's Second Amended Complaint on February 8, 2022. Dkt. 56.

In February 2021, the Parties exchanged Rule 26(a) Initial Disclosures and Defendants disclosed three witnesses with purported knowledge of the allegations in Plaintiff's Complaint: John Herendeen, Lucas Power and Michael Sanderson. On March 22, 2021, Plaintiff served

amended[1] written discovery requests seeking information and documents related to Amazon's biometric temperature scanning cameras and software implemented and used in Illinois. Amazon submitted objections and responses to Plaintiff's requests on May 12, 2021, made several document productions in June, August, October and November of 2021, and provided a supplemental interrogatory response on November 9, 2021, that identified each fulfillment center in Illinois where temperature scanning cameras and software were installed, and the number of workers employed at those facilities during the relevant time period.

On December 1, 2021, then-plaintiff, William Naughton, moved to be substituted as named plaintiff, which Defendants vehemently opposed. While this motion was pending, Amazon refused to proceed with discovery and present witnesses for deposition. On January 13, 2022, the Court granted the motion substituting Ms. Redd as Named Plaintiff and extended the fact discovery deadline to May 6, 2022. Dkt. 53. In the months that followed, Plaintiff Redd served her written discovery responses and was deposed on March 15, 2022. On March 29, 2022, the Court extended the fact discovery deadline to June 3, 2022 and set expert disclosure deadlines for June 24, 2022. Dkt. 61. After seeking Amazon's witness depositions for more than nine months, two of Defendants' witnesses, Lucas Power and John Herendeen, were finally deposed on April 21, 2022, and April 27, 2022. On May 4, 2022, in its objections and responses to Plaintiff's second set of interrogatories, Defendants identified for the very first time Dave Nichols as a person with information about the cameras and software used at MDW7.[2] Defendants also objected to and

---

[1] The original discovery requests were initially propounded on February 15, 2021, and the only amendment was to change the lead Plaintiff's name.

[2] Failing to ever identify Dave Nichols as part of its Rule 26 disclosures and only doing so after the original fact discovery deadlines and less than three weeks before the amended discovery deadline, and using his declaration in support of summary judgment to assert numerous uncontested material facts further demonstrates Amazon's 'hide-the-ball' and 'run-the-clock' discovery tactics.

refused Plaintiff's Rule 34 site inspection request at MDW7, instead offering for inspection only a few temperature scanning cameras in counsel's possession at its offices.

The fact discovery deadline was extended once more, to June 30, 2022. Dkt. 71. On June 17, 2022, the Court denied Plaintiff's motion to amend, and granted in part Defendants' motion to depose the former named plaintiffs, ordering these depositions to be completed by July 22, 2022. Dkt. 76. The primary expert disclosure deadline of June 24, 2022, remained. Dkt. 77. None of Defendants' witnesses had any personal knowledge of how Amazon's temperature scanning system functioned. PSOF ¶¶ 23-24, 26. Defendants did not identify any expert witnesses. Nonetheless, without a single witness with personal knowledge regarding the functionality of Amazon's temperature scanning system, Defendants filed the instant motion, seeking summary judgment on Plaintiff's individual BIPA claims.

## III.    LEGAL STANDARD

### A.    <u>Summary Judgment Standard</u>

Summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court reviewing a motion for summary judgment must "examine the record in the light most favorable to the [non-movant], granting them the benefit of all reasonable inferences that may be drawn from the evidence." *Schlaf v. Safeguard Prop., LLC*, 899 F.3d 459, 465 (7th Cir. 2018). "The standard for summary judgment is well established: with the court drawing all inferences in the light most favorable to the non-moving party, the moving party must discharge its burden of showing that there are no genuine questions of material fact and that [it] is entitled to judgment as a matter of law." *Spierer v. Rossman*, 798 F.3d 502, 507 (7th Cir. 2015). "If the movant has failed to make this initial showing, the court is obligated to deny the motion." *Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 601 (7th Cir. 2015); *accord. Johnson v. Hix Wrecker Serv., Inc.*,

651 F.3d 658, 662 (7th Cir. 2011) ("A party opposing summary judgment does not have to rebut factual propositions on which the movant bears the burden of proof and that the movant has not properly supported in the first instance."). Summary judgment is a "drastic remedy" that "is never warranted except on a clear showing that no genuine issue as to any material fact remains for trial." *Peoples Outfitting Co. v. Gen. Elec. Credit Corp.*, 549 F.2d 42, 45 (7th Cir. 1977), citing *Mintz v. Mathers Fund, Inc.*, 463 F.2d 495, 498 (7th Cir. 1972); Fed. R. Civ. P. 56(a).

### B. The PREP Act

In 2005, Congress enacted the Public Readiness and Emergency Preparedness Act ("PREP Act") in response to the SARS epidemic of 2003. *See* 42 U.S.C. §§ 247d-6d, 247d-6e; *Ruiz v. ConAgra Foods Packaged Foods, LLC*, 2021 WL 3056275, at *2 (E.D. Wis. July 20, 2021). During a public health emergency resulting in a declaration by the Secretary of the Department of Health and Human Services ("HHS"), the Act immunizes certain "covered persons" from specific "claims for loss" with respect to the administration or use of "covered countermeasures." 42 U.S.C. § 247d-6d(a)(2)(B); *see also Mackey v. Tower Hill Rehab., Ltd. Liab. Co.*, 569 F. Supp. 3d 740, 745 (N.D. Ill. Nov. 1, 2021).

## IV. ARGUMENT

### A. Amazon Fails To Establish That it is Immune From Liability For BIPA Violations Under The PREP Act.

#### 1. Plaintiff's Claims For Statutory Violations of BIPA Are Not "Claims For Loss" Under The PREP Act.

BIPA establishes, by statute, a private right of action for individuals to offer informed, written consent before their irreplaceable biometric information is collected, stored, and disseminated. Facing liability for this noncompliance, Amazon, after the fact, points to the PREP Act, claiming it is immune from BIPA liability because Plaintiff's claims qualify as "claims for

loss." Def.'s Mem. At 6-11. But the PREP Act specifically defines and enumerates which "claims for loss" are covered, none of which involve claims for statutory violations of BIPA.

Section (a)(1) of the PREP Act provides immunity for "all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure." 42 U.S.C. § 247d-6d(a)(1). The PREP Act specifically defines "loss" to include: (i) death; (ii) physical, mental, or emotional injury, illness, disability, or condition; (iii) fear of physical, mental, or emotional injury, illness, disability, or condition, including any need for medical monitoring; and (iv) loss of or damage to property, including business interruption loss. 42 U.S.C. § 247d-6d(a)(2)(A).[3] Amazon does not attempt to argue that this first requirement has been met. That is because it cannot.

BIPA was enacted to give individuals "the opportunity to make informed choices about to whom and for what purpose they will relinquish control of [biometric] information." *Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617, 626 (7th Cir. 2020). While the PREP Act applies to certain tort claims, BIPA claims arise not from tort, but from statutory violations.[4] As observed by the Illinois Supreme Court, BIPA imposes duties on private entities as a statutory right, and a violation of those rights "constitutes an invasion, impairment, or denial of the statutory rights" of an

---

[3] HHS Advisory Opinion 20-04 has also made clear that "PREP Act immunity (but not preemption) is limited to claims for death, physical, mental or emotional injury, illness, disability or condition, fear of such harm or need for medical monitoring, and damage to property, including business interruption loss." *See* U.S. Dep't of Health & Human Servs., Off. Of Gen Couns., Advisory Op. 20-04, at 3 (Oct. 23, 2020).

[4] At the risk of stating the obvious, statutory violations are not torts. *U.S. v. Republic Steel Corp.*, 286 F.2d 875, 889 (7th Cir. 1961) ("[T]his is not a tort case but one for the enforcement of a federal statute."); *Williams v. Federal Deposit Ins. Corp.*, 2009 WL 1209029, at *2 (N.D. Ill. Apr. 30, 2009), *aff'd sub nom. Williams v. Fleming*, 597 F.3d 820 (7th Cir. 2010) ("A violation of the Illinois Human Rights Act is a statutory violation, not a tort."); *Nichols Motorcycle Supply, Inc. v. Dunlop Tire Corp.*, 1994 WL 698486, at *5 (N.D. Ill. Dec. 12, 1994) ("At most, the [Anti-Price Discrimination Act] claim describes a federal statutory violation, not a tort.").

7

aggrieved person or customer. *Rosenbach v. Six Flags Ent. Corp.*, 129 N.E. 3d 1197, 1206 (Ill. Sup. 2019). ("The violation, in itself, is sufficient to support the individual's or customer's statutory cause of action.").

The Illinois Supreme Court has previously rejected arguments that BIPA is preempted by other laws covering claims for injury. *McDonald v. Symphony Bronzeville Park, LLC*, 193 N.E.3d 1253, 1267 (Ill. 2022) (holding that BIPA claims are not preempted by the Illinois Worker's Compensation Act ("IWCA"), which only preempts claims for physical injury and emotional distress arising out of that physical injury, or a psychological injury stemming from a definite time and place). In so ruling, the Supreme Court distinguished the violation of a privacy right from personal injury claims, like those covered by the IWCA, explaining:

> "[t]he personal and societal injuries caused by violating [BIPA's] prophylactic requirements are different in nature and scope from the physical and psychological work injuries that are compensable under the Compensation Act. [BIPA] involves prophylactic measures to prevent compromise of an individual's biometrics [citation omitted] … [Plaintiff's] loss of the ability to maintain her privacy rights[5] was not a psychological or physical injury that is compensable under the Compensation Act." *Id.*

Similarly, in the context of determining whether a BIPA claim should be considered a "personal injury" for the purpose of a statute of limitations analysis, federal courts in this circuit have collectively held that the violation of a privacy right under BIPA is not a physical or psychological injury. *Vaughan v. Biomat USA, Inc.*, 2022 WL 4329094, at *11 (N.D. Ill. Sept. 19, 2022) ("[Plaintiffs] allege that Defendants 'deprived them of benefits, rights, opportunities and decisions' and illegally captured … their finger scans, biometrics, and property.' [citation omitted]. Those are neither physical nor emotional injuries."); *Quarles v. Pret A Manger (USA) Ltd.*, 2021 WL 1614518, at *4 (N.D. Ill. Apr. 26, 2021) ("[T]he harm Quarles alleges concerns her inability

---

[5] The "loss of the ability to maintain [one's] privacy right" refers to the deprivation of statutory rights, not a "loss of or damage to property" as defined by the PREP Act. *See* 42 U.S.C. § 247d-6d(a)(2)(A)).

to control information. This decision-making harm is not analogous to mental anguish, nor does it fit neatly into a traditional tort or contract theory that forms the basis of personal injury claims.").

Given that Amazon omits any explanation for why or how BIPA claims qualify as "claims for loss" that are subject to the PREP Act, this Court need not develop such arguments for Defendant now. *Shreffler v. City of Kankakee*, 2021 WL 6200763, at *6 (C.D. Ill. Nov. 29, 2021) (it is not the court's responsibility to develop a defendant's conclusory or incomplete arguments into ones that would survive summary judgment). Regardless, there is simply no sensible argument—and an absolute dearth of authority—to fit Plaintiff's claims for statutory violations of BIPA under any category of "loss" subject to immunity under the PREP Act, making summary judgment inappropriate.

### 2. Plaintiff's BIPA Claims Are Not "Causally Related" to Defendant's Use of ICI Cameras, Devices and Software.

Skipping any explanation for how BIPA claims are "claims for loss" subject to the PREP Act, Amazon argues that there is a "causal relationship" between Plaintiff's BIPA claims and Amazon's use of temperature scanning ICI cameras and software. Def.'s Mem. at 10. However, BIPA does not prohibit a private entity from using biometric devices or software, and Plaintiff does not challenge Amazon's use of this system in and of itself. Rather, Plaintiff's claims stem from Amazon's failure to follow BIPA's informed consent requirements.

In construing whether a claim has a "causal relationship" with the actual use of a covered countermeasure, courts look for a "causal connection between the injury and the use or administration of covered countermeasures." *Martin v. Petersen Health Operations, LLC*, 2021 WL 4313604, at *8 (C.D. Ill. Sept. 22, 2021), a'ffd, 37 F.4th 1210 (7th Cir. 2022). The limits of the "causal relationship" test are best explained in *Haro v. Kaiser Found. Hosps.*, 2020 WL 5291014, at *3 (C.D. Cal. Sept. 3, 2020). There, a hospital required its hourly-paid hospital

employees to arrive 15 minutes before their shift to undergo COVID-19 screening procedures. *Id.* Plaintiff alleged that the hospital's failure to pay its hourly-paid employees for these screenings violated state minimum wage laws. *Id.* The court rejected the defendant's PREP Act immunity argument because the claims were not about the actual screening procedures, but the wage violations occurring because of the procedures. *Id.* ("Haro's minimum wage claim is not causally connected to the screening procedures themselves, but rather, the requirement that employees *show up 15 minutes before their shifts start*. Kaiser could just as easily have implemented the screenings without the requirement that employees show up early.") (emphasis in original). Plaintiff does not contest Amazon's use of the temperature scanning devices. Rather, Plaintiff's allegations stem from Amazon's separate decision to collect and use her biometrics *without first following the requirements of BIPA*. Accordingly, there is no "causal relationship" between her claims and the temperature screening process itself.

Moreover, just as the defendant in *Haro* could have "easily [] implemented the screenings without the requirement that employees show up early," (*id.*), Amazon could have easily obtained informed written consent from Plaintiff and other workers and established a public retention schedule regarding biometric data collection and use. The PREP Act simply does not offer such robust immunity that private entities can freely violate state laws. To find otherwise opens the door for private entities to say *any* noncompliance with existing statutory or other employee rights can be freely violated if they are loosely connected to the administration of a covered countermeasure. Amazon fails to meet its burden of proof in demonstrating that there is no genuine issue of fact as to whether Plaintiff's claims for statutory violations of BIPA are claims for loss specifically enumerated under the PREP Act, and its Motion must be denied.

**B.      Plaintiff's Claims For Statutory Violations of BIPA Are Not Expressly Preempted by The PREP Act.**

Defendant also asserts that BIPA is expressly preempted by the PREP Act, pointing to a state law preemption clause which provides that "no State ... may establish, enforce, or continue in effect ... any provision of law or legal requirement" that is (1) "different from, or is in conflict with" the PREP Act, **and** (2) "relates to" the "use" or "administration" of a "covered countermeasure." 42 U.S.C. § 247d-6d(b)(8). Without any support, Amazon contends that BIPA is "different from" and "in conflict" with the PREP Act because BIPA's notice and consent provisions would create "additional requirements" for its use of the ICI cameras. Def.'s Mem. at 11. As an initial matter, the Court need not reach this issue, as Amazon fails to demonstrate that the PREP Act has any application to Plaintiff's claims. *See Mackey*, 569 F. Supp. 3d at 745 ("Without reaching the preemption question, however, the court concludes that the PREP Act does not apply to the conduct alleged in the Complaint at all."). But regardless, BIPA does not fall into the plain text meaning of the PREP Act's express preemption section.

Express preemption exists when Congress "declares its intention to preempt state regulation through a direct statement in the text of federal law." *C.Y. Wholesale Inc. v. Holcomb*, 965 F.3d 541, 546 (7th Cir. 2020) (internal quotations omitted). "If the statute contains an express pre-emption clause, the task of statutory construction must in the first instance focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 512 (1996), quoting *CSX Transp., Inc. v. Easterwood,* 507 U.S. 658, 664 (1993). "Where the language of the statute is clear, resort to the agency's interpretation is improper." *Medtronic*, 518 U.S. at 512, citing *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43 (1984).

The PREP Act's state law preemption section reads as follows:

> During the effective period of a declaration under subsection (b), or at any time with respect to conduct undertaken in accordance with such declaration, no State or political subdivision of a State may establish, enforce, or continue in effect with respect to a covered countermeasure any provision of law or legal requirement that—
>
> > (A) is different from, or is in conflict with, any requirement applicable under this section; and
> >
> > (B) relates to the design, development, clinical testing or investigation, formulation, manufacture, distribution, sale, donation, purchase, marketing, promotion, packaging, labeling, licensing, use, any other aspect of safety or efficacy, or the prescribing, dispensing, or administration by qualified persons of the covered countermeasure, or to any matter included in a requirement applicable to the covered countermeasure under this section or any other provision of this chapter, or under the Federal Food, Drug, and Cosmetic Act [21 U.S.C. 301 et seq.].

42 U.S.C. § 247d-6d(b)(8). First, the PREP Act is devoid of any requirement pertaining to a covered entities obtaining informed consent and publication of biometric information retention schedules. Thus, BIPA does not fall under this preemption category as it does not "differ" or "conflict" with another requirement of the PREP Act. Because of the use of "and" in the express preemption section, the analysis ends here. But even if the Court moved to the second section of the preemption qualifier, BIPA contains no provisions regarding "design, development, clinical testing, investigation, formulation, manufacture, distribution, sale, donation, purchase, marketing, promotion, packaging, labeling, licensing," or even use of covered countermeasures. BIPA does not even regulate the usage or safety of administration of biometric devices. It simply requires that private entities that collect, store, and disseminate biometric information follow BIPA's informed consent regime. While Plaintiff's search has revealed a dearth of authority on the question of whether BIPA is preempted by the PREP Act, the plain text makes clear that it is not.

At least one court in this circuit has held that the express preemption provision of the Medical Device Amendments of 1976 ("MDA"), 21 U.S.C. § 360k, which regulates the safety and

use of medical devices, does not preempt BIPA. In *Crumpton v. Octapharma Plasma, Inc.*, the court held that the MDA's express preemption provision did not apply to BIPA claims, even though the plaintiff's fingerprint data was collected through a medical device. 513 F. Supp. 3d 1006, 1013 (N.D. Ill. 2021). The Court explained that "BIPA regulates 'private entit[ies] in possession of biometric identifiers or biometric information'" and that "BIPA's requirements are only triggered by the collection of biometric identifiers, which the MDA does not mandate. Express preemption is inapplicable." *Id.* Similarly, the PREP Act does not mandate any requirements regarding the collection of biometric identifiers, even in the context of the use and administration of covered countermeasures.

Finally, Defendants' authorities are easily distinguishable. Amazon relies on *Parker v. St. Lawrence Cnty. Pub. Health Dep't* to stand for the proposition that the PREP Act preempts "all state law tort claims ... including one based upon a defendant's failure to obtain consent." Def.'s Mem. at 11, citing 102 A.D. 3d 140 (N.Y.App. Div. 2012). But again, BIPA claims are not tort claims. *Bradenberg v. Meridian Senior Living, LLC*, 564 F. Supp. 3d 627, 633 (C.D. Ill. 2021) ("simply because statutes generally can impose tort liability does not mean BIPA does."). And *Parker* involved common law negligence and battery claims where the plaintiff's daughter was inoculated with an H1N1 influenza vaccine without plaintiff's consent. 102 A.D. 3d at 141. Here, Plaintiff does not allege any tort claims stemming from Amazon's temperature scanning process. Additionally, Amazon's attempt to draw a comparison with *Farwell v. Google* is misplaced. Def.'s Mem. at 11, citing 2022 WL 1568361 (C.D. Ill. Mar. 31, 2022). There, the court held that the Children's Online Privacy Protection Act's ("COPPA") express preemption clause barred plaintiff's BIPA claims because plaintiff expressly admitted the defendant's conduct violated COPPA. *Farwell*, 2022 WL 1568361, at *5. Again, Plaintiff makes no claim that Amazon's

temperature scanning process, or the use of ICI cameras and software in and of itself, was improper. And Plaintiff's claims are not ones for "loss" subject to PREP Act immunity. Accordingly, Plaintiff's BIPA claims are not expressly preempted by the PREP Act.

### C. Amazon Fails to Meet Its Burden to Demonstrate There Is No Genuine Dispute of Material Fact That It Did Not Capture, Collect, or Otherwise Obtain Plaintiff's Biometric Identifiers and Biometric Information.

Rather than putting forth a single piece of evidence demonstrating it did not collect or use Plaintiff's biometric identifiers or information, Amazon ignores its own documents and asserts *Plaintiff* has no record evidence to show Amazon's ICI cameras and software collected scans of her facial geometry. As an initial matter, on summary judgment, the moving party must present its own evidence establishing, *beyond any reasonable doubt*, that what it says is true as a matter of law. Other than a single, happy-camper declaration from an employee that was not included in Amazon's Rule 26 disclosures and was only identified three weeks before the close of discovery, Amazon does not present any record evidence supporting its arguments.

Contrary to Amazon's contentions, the record is replete with documents showing that Amazon's ICI temperature scanning system function by capturing and using facial recognition technology. Tellingly, Amazon *admits* this fact. *See* DSOF ¶¶ 45-46, 48, 51. Considering Amazon is one of the largest, if not the largest data collection and technology company in the world, ████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

where Plaintiff worked from approximately October 2020 to March 2022. PSOF ¶¶ 1-7, 34, 37.

████████████████████████████████████████████████████



PSOF ¶¶ 18-19.

. PSOF ¶¶ 4-8, 11-15. Because these systems use facial recognition technology to generate face temperature readings, scans of facial geometry of all persons entering an Amazon workplace facility, including Plaintiff at MDW7, must first be collected. PSOF ¶¶ 17, 20-21, 35. Specifically, Amazon's ICI cameras connect to black boxes, which regulate the temperature calibration of the software. PSOF ¶ 4.

. PSOF ¶ 5. Every person who entered an Amazon facility was required to stand in front of and look directly at Amazon's ICI camera system so their facial geometry could be recorded, facial recognition technology applied, and their temperature recorded. PSOF ¶¶ 17, 22.

To detect a person's temperature, the ICI system recorded and scanned a person's face. PSOF ¶¶ 6, 12, 15. Each person's face scan was monitored on the Amazon laptop through the ICI software's real-time image preview. PSOF ¶¶ 10-13. The software's real-time image preview used a face detection box to automatically identify, track, and scan a face recorded by the ICI camera, and utilized facial recognition technology to provide a temperature reading. PSOF ¶¶ 12-15. ICI's software automatically recorded these images from temperature screenings ***by default***. PSOF ¶ 15. In other words, the data must be captured before Amazon's ICI software could detect and record a face temperature. *Id.* And, it is undisputed this technology was automatically enabled on Amazon's ICI cameras and software. PSOF ¶¶ 15, 21.

15

Moreover, Amazon Web Services ("AWS") owns and sells cloud-based facial recognition technology, including its "Rekognition" system, that uses machine learning and artificial intelligence to extract information and data from images and videos. PSOF ¶ 27. This is important not only because it demonstrates Defendants likely shared this data with AWS and Rekognition without Plaintiff's consent, but also because a common use for Rekognition is its face-based user verification technology that enables Amazon applications to confirm user identities by comparing their live image with a reference image. PSOF at ¶ 28. Upon hire, Amazon collected an image of Plaintiff's face, that was transferred to her identification badge she was required to wear, picture visible, at all times while working, and while having her facial geometry scanned for temperature checks. PSOF ¶¶ 35-37. Amazon workers' biometric data are easily obtainable, and Amazon's own witness, Lucas Power, discussed the opportunity for easy integration of the biometric data captured by ICI cameras and software with Rekognition to train and enhance it. PSOF ¶¶ 31-33.

Conveniently and almost exclusively relying on self-serving testimony from three of its own employees—one of whom was disclosed less than a month before the fact discovery deadline, the others contradicting their prior deposition testimony—and without any expert analysis, reports, or guidance on the biometric capabilities and functions of their ICI biometric cameras and software, Amazon argues that it "intentionally configured the [ICI camera] systems to not use their [facial recognition technology]"[6] and that "facial detection" is different from "facial recognition" and therefore, it did not collect biometric data with its ICI cameras. Def.'s Mem. at 14. However, this is a distinction without a difference, as ICI—the manufacturer of the cameras and software—

---

[6] Amazon also argues that it designed the ICI camera systems as "closed network," meaning the devices were not connected to the internet. Def.'s Mem. at 4, 18. However, Amazon's ICI FM 320+ and FM 640+ cameras came configured with IP addresses and had to be connected to the internet to properly function, rendering Amazon's contention baseless. PSOF ¶ 9. Lastly, other than conclusory statements from Amazon's own employees, there is no evidence to suggest biometric data was not stored on Amazon's network.

documents, such as user guides and manuals, consistently use these terms interchangeably. PSOF ¶ 8. ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████. PSOF ¶¶ 4, 6-7, 11-15, 20-21. This feature was enabled by default and could only be disabled by switching the temperature scanning software to "manual mode," which would require a user to draw a box around a person's face each time s/he stood in front of the camera—a task that would slow the scanning process down significantly and is counter-intuitive to Amazon's goal in efficiently scanning temperatures before entering a facility. *Id*. Amazon has not produced a shred of evidence, not a document, e-mail, message or memo, demonstrating it used ICI cameras and software in "manual mode."

Moreover, Amazon mischaracterizes its witness testimony to suggest it did not collect biometric data, and the new affidavits from these and other Amazon witnesses submitted in support of its Motion are far from credible. Def.'s Mem. at 13. Lucas Power and John Herendeen were identified by Amazon in its Rule 26 initial disclosures as persons most knowledgeable about Amazon's collection and use of biometric data from its temperature scanning cameras. Yet, during their depositions, neither could affirmatively state whether or not Amazon collected biometric data from its temperature scanning cameras and software or used facial recognition technology—as set forth on Amazon's own ICI documents. In fact, Mr. Power actually testified that he was "not familiar" with and did not know anything about the facial recognition, recording, or database management technology of the ICI cameras and software. PSOF ¶ 23. Mr. Herendeen, on the other hand, confirmed the existence of facial recognition technology in the ICI cameras, and that they "scan [workers'] body temperatures between the eyelids because that was the most accurate location." PSOF ¶ 25.

Without presenting any expert testimony on these technical issues, Amazon asks this Court to rely upon select documents and testimony given by witnesses without personal knowledge as to the functionality of the highly technical ICI cameras and software systems to make a determination as to the functionality of this system, *i.e.*, whether it collects biometric data. This alone demonstrates a genuine issue of fact exists going to an issue material to determination of liability. Plaintiff, as the non-movant and based on documents in the record, is entitled to the reasonable inference that Amazon, through its ICI temperature scanning cameras and facial recognition software, captured, collected, and stored Plaintiff's biometric identifiers. *James v. Hale*, 959 F.3d 307, 314 (7th Cir. 2020) (explaining that the non-moving party is entitled to every reasonable inference when determining whether a genuine dispute exists).

It is undisputed that Amazon used ICI temperature scanning cameras and facial recognition software on Plaintiff while she worked at Amazon's MDW7 location from October 2020 to November 2020. PSOF ¶¶ 36-37. It is also undisputed that Amazon did not gain Plaintiff's consent for collection or obtainment and disclosure of her biometric identifiers or information or establish any public retention guidelines regarding its biometric data collection, as required by BIPA prior to collection. PSOF ¶¶ 38-40. Plaintiff has demonstrated that Amazon's ICI cameras and software unquestionably captured, collected, obtained and stored Plaintiff's biometric data in order to properly detect and record her face temperature. PSOF ¶¶ 11-15, 20-22, 25, 36-38. At the very least, Plaintiff has demonstrated that a genuine issue of material fact exists as to whether Amazon captured, collected, or stored Plaintiff's facial geometry data. Amazon has failed its burden and its motion must be denied.

### D. <u>Plaintiff is Entitled to Relief Based on Amazon's BIPA Violations.</u>

Amazon argues that because Plaintiff has no evidence showing that it collected her biometric identifiers or information, then she is not entitled to any relief under BIPA. Def.'s Mem.

18

at 18-20. But this argument fails outright, as Plaintiff has demonstrated that Amazon's ICI temperature scanning systems collected and used facial geometry scans to properly and effectively detect and record Plaintiff's and other workers' temperatures. *See* §IV(C).

BIPA provides for a private right of action for "[a]ny person aggrieved by a violation" of the statute. 740 ILCS 14/20. The Illinois Supreme Court has also held that, when a private entity fails to comply with any one of section 15's requirements, the violation itself is sufficient to support the individual's statutory cause of action, without the need for additional proof. *Rosenbach*, 2019 IL 123186 at ¶¶ 36, 40. Contrary to its assertions, ████████████████████ ████████████████████████████████████████████, and such application needed to be actively disabled and used in "manual mode" to avoid capturing and using biometric data. PSOF ¶¶ 7, 21. Amazon has not provided any evidence that it did so. Amazon's argument that its ICI systems were not networked is also contested, because the ICI systems come configured with IP addresses and must be connected to the internet to properly function. PSOF ¶ 9. And because Amazon does not dispute that it failed to gain informed consent or establish biometric retention and destruction guidelines, it is likely still in possession of her data. Accordingly, statutory damages and injunctive relief are entirely appropriate and necessary here.

Amazon is a multi-billion-dollar technology company and data collection conglomerate that focuses on artificial intelligence and cloud computing. For years, Amazon has developed and sold its own facial recognition software for profit. And Amazon has been sued countless times for BIPA violations. Yet, and despite capturing Plaintiff's facial geometry, it made no effort to determine whether it was subject to BIPA, or to comply with it. As explained in Section IV.C., *supra*, Amazon did not avoid the collection and capture of Plaintiff's facial geometry scans, which are explicitly regulated by BIPA. Amazon is tasked not only with having knowledge about the

19

capabilities of its own cameras systems, but they are also presumed to know the law, as decades of American jurisprudence establish. Amazon's blatant ignorance of BIPA and refusal to investigate its own ICI temperature scanning camera and software functionality and configuration, despite using a biometric-enabled system for years, was certainly negligent, if not reckless. Because the facts demonstrate that Amazon violated BIPA negligently, if not recklessly, the Court should deny Amazon's motion.

## V.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this Court enter an Order denying Defendants' Motion for Summary Judgment.

Date:   November 11, 2022                          Respectfully submitted,

                                                   By: s/ *Catherine Mitchell*

                                                   ***One of Plaintiff's Attorneys***

## CERTIFICATE OF SERVICE

I, an attorney, hereby certify that on November 11, 2022, a true and correct copy of the

foregoing **PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO**

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** was electronically filed via this

Court's CM/ECF system which will send notification of such filing to the listed attorneys of

record.

*/s/ Catherine Mitchell*