**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CYNTHIA REDD, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> AMAZON.COM, INC. and AMAZON.COM LLC, <br><br> Defendants. | Case No. 20 C 6485 <br><br> Judge Sunil R. Harjani |

**MEMORANDUM OPINION AND ORDER**

Cynthia Redd, an Illinois resident, works for Amazon.com Services LLC. Redd claims that Amazon.com, Inc. and Amazon.com Services LLC (formerly known as "Amazon.com LLC") (collectively, "Amazon")[1] violated various requirements of the Illinois' Biometric Information Privacy Act (the "BIPA"), 740 ILCS 14/1 *et seq.*, when it collected her biometric identifiers and biometric information (collectively, "biometric data") while using thermal cameras to conduct temperature checks during the COVID-19 pandemic. Redd has sued on behalf of herself and a putative class of similarly situated individuals who allegedly had their biometric data collected by Amazon without first complying with the requirements of Sections 15(a), 15(b), and 15(d) of the BIPA. Now before the Court is Amazon's motion for summary judgment with respect to all claims asserted by Redd in her individual capacity. Amazon seeks summary judgment, based on, among other things, statutory immunity under the Public Readiness and Emergency Preparedness Act (the

---

[1] Redd brought this lawsuit against Amazon.com, Inc. and Amazon.com LLC. Amazon states that Amazon.com LLC no longer exists and therefore is not a proper defendant. Amazon assumes, and Redd does not dispute, that she intended to sue the entity that currently employs her—namely, Amazon.com Services LLC.

"PREP Act" or "the Act"), a statute which protects persons who administer pandemic countermeasures from liability. Under the PREP Act, Amazon contends, Redd's claims for violations of the BIPA are "claims for loss" and are causally related to Amazon's use of the thermal cameras. The plain text of the PREP Act definitely resolves these issues in Amazon's favor. Accordingly, Amazon's motion [84] is granted.

## BACKGROUND[2]

"Congress enacted the PREP Act in 2005 to encourage the expeditious development and deployment of medical countermeasures during a public health emergency by allowing the HHS Secretary to limit legal liability for losses relating to the administration of medical countermeasures such as diagnostics, treatments, and vaccines." *Cannon* v. *Watermark Retirement Communities, Inc.*, 45 F.4th 137, 139 (D.C. Cir. 2022) (internal quotes and citation omitted). The PREP Act grants immunity "from suit and liability under Federal and State law" for "all claims for loss" stemming from the administration or use of a "covered countermeasure." 42 U.S.C. § 247d-6d(a)(1). "The immunity is triggered by a declaration from the Secretary identifying the threat to public health, the period during which immunity is in effect, and other particulars." *Cannon*, 45 F.4th at 139; 42 U.S.C. § 247d-6d(b)(1).

On March 17, 2020, the Secretary of Health and Human Services ("Secretary") declared that "COVID-19 constitutes a public health emergency" under the PREP Act. 85 Fed. Reg.

---

[2] The facts are largely taken from Redd's response to Amazon's Local Rule 56.1 statement of facts ("PRDSOF"). Doc. 97. They are undisputed unless otherwise noted.

15,19801, 2020 WL 1245193 (Mar. 17, 2020).³ PRDSOF ¶ 19.⁴ Following the Secretary's declaration, Amazon used thermal cameras to screen employees' temperatures who worked in some of its warehouse facilities, including in Illinois. *Id*. at ¶ 24. Using thermal cameras in high-

---

³ The Court takes judicial notice of the Secretary's Declaration, which is publicly available on the U.S. Department of Health and Human Services website. "District courts can take judicial notice of information on government websites." *Bartnett v. Abbott Laboratories*, 492 F.Supp.3d 787,798 n.2 (N.D. Ill. 2020) (citing *Denius v. Dunlop*, 330 F.3d 919, 926-27 (7th Cir. 2003)); *see also Pickett v. Sheridan Health Care Center*, 664 F.3d 632, 648 (7th Cir. 2011) ("We have recognized the authority of a court to take judicial notice of government websites.").

⁴ In response to Amazon's Local Rule 56.1 statement of facts, Redd objected that several paragraphs contain improper opinions of counsel and legal arguments, do not address material facts, and contain multiple assertions per paragraph. *See* Doc. 97 at 1-2. To the extent the Court agreed with Redd, the Court disregarded any opinions, legal arguments and immaterial facts set forth in Amazon's Local Rule 56.1 statement of facts. Redd also objected to many of Amazon's statements of fact "on grounds that the statement is vague, conclusory, misleading, unsupported, lacks foundation, assumes facts not in evidence and calls for speculation." *See*, *e.g.* ¶¶ 19, 21, 24, 25, 27, 29, 30, 35, 43. However, Redd does not explain how this boilerplate objection applied to the particular statements of fact, and the Court will not speculate as to the specific alleged error in the statements of fact. For this reason, Redd's undeveloped and conclusory objections are inadequate and overruled. *Shipley v. Chicago Bd. of Election Commissioners*, 947 F.3d 1056, 1063 (7th Cir. 2020) ("Arguments that are underdeveloped, cursory, and lack supporting authority are waived."). Nevertheless, to the extent the Court understood the basis for the objection, it was considered. Moreover, in other instances, Redd made conclusory objections on the ground that a statement of fact "mischaracterizes the cited document" or "mischaracterizes witness testimony." *See*, *e.g.*, ¶¶ 19, 21, 25, 27. Again, Redd has not demonstrated why she believes the particular statements of fact mischaracterize the evidence and her conclusory objections carry no weight. In any event, having reviewed Redd's conclusory boilerplate objections, the Court considered only relevant, admissible, and supported facts. Finally, Redd challenges certain statements of fact because Amazon relies on a "self-serving declaration from a current Amazon employee, Dave Nichols, who was never previously disclosed by [Amazon] and was only identified at a very late stage of the litigation as someone with personal knowledge as to the location or positioning" of Amazon's ICI camera systems. *See*, *e.g.*, ¶ 43. Redd claims Amazon identified Nichols "for the very first time" on May 4, 2022 as a person with information about the cameras and software at MDW7. Doc. 96 at 8. As a threshold matter, this objection is meritless because the record discloses that Amazon produced internal communications involving Nichols and the thermal camera setup as early as November 2021, before the original fact discovery deadline of February 28, 2022. Doc. 45; Doc. 104-1 at ¶ 3; Doc. 104-2 at 7. Moreover, Redd does not demonstrate why identifying Nichols "before the amended discovery deadline" of June 30, 2022 was improper. Doc. 77. If Redd believed Amazon engaged in improper discovery tactics by failing to disclose Nichols as part of its Rule 26(a)(1) disclosures, she could have filed a Rule 37(c)(1) motion seeking relief. Lastly, "[s]elf-serving affidavits can indeed be a legitimate method of introducing facts on summary judgment." *McKinney v. Office of Sheriff of Whitley Cnty.*, 866 F.3d 803, 814 (7th Cir. 2017) (internal quotes and citation omitted); *Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013) ("As we have repeatedly emphasized over the past decade, the term 'self-serving' must not be used to denigrate perfectly admissible evidence through which a party tries to present its side of the story at summary judgment.") (citations omitted).

traffic warehouses allowed Amazon to check employees' temperatures and thereby reduce the risk of COVID-19 transmission.[5] *Id*. at ¶¶ 25, 27. One of the warehouses at which Amazon used thermal cameras to screen employees' temperatures was its MDW7 facility in Monee, Illinois. *Id*. at ¶ 29. Amazon used thermal cameras to screen employees' temperatures at MDW7 from about April or May of 2020 to about August 2021. *Id*. at ¶ 30. Amazon purchased the cameras used at MDW7 from non-party Infrared Cameras, Inc. ("ICI"). *Id*. at ¶ 35. The ICI camera systems were positioned near the entrance of MDW7 so that Amazon could check employees' temperatures as they arrived for work each day. *Id*. at ¶ 43.

Redd is an employee who had her temperature checked by those cameras. Redd worked at Amazon's MDW7 facility from about October 2020 to about March 2022. PRDSOF ¶ 31. Redd transferred to Amazon's MDW2 facility in March 2022, where she currently works. *Id*. at ¶ 33. Amazon has not used thermal cameras to screen employees' temperatures at MDW2 during the time Redd has worked at MDW2. *Id*. at ¶ 34. Moreover, Amazon no longer uses any thermal cameras, including the ICI camera systems, to screen employees' temperatures at any Amazon facilities, including MDW7 and MDW2. *Id*. at ¶ 67.

Redd claims that Amazon used the thermal camera to check her temperature and collect her biometric identifiers (*i.e.*, scans of facial geometry) and biometric information multiple times while she worked at MDW7 without her knowledge or consent. PRDSOF ¶ 32. She alleges Amazon not only collected and stored her biometric data, but it also subsequently disclosed that data "to other Amazon entities, to the third-party biometric device and software vendor(s), and to other, currently unknown, third parties, which, inter alia, host and/or analyze the biometric data."

---

[5] Fever is a common symptom of COVID-19. *See* U.S. Food and Drug Admin. ("FDA"), Enforcement Policy for Clinical Electronic Thermometers at 2 n.2 (Nov. 3, 2023). The Court considers the Enforcement Policy because it is publicly available on the U.S. Food and Drug Administration website. https://www.fda.gov/media/136698/download.

Doc. 55, Second Am. Compl. ("SAC") ¶ 34. Based on those allegations, Redd asserts three BIPA claims. First, she alleges that Amazon violated Section 15(b) of BIPA by collecting her biometric data without first providing the notice and obtaining the consent required by Section 15(b). *See* 740 ILCS § 14/15(b); *see also* SAC ¶¶ 78-86. Second, she alleges that Amazon violated Section 15(a) by possessing her biometric data without adopting a "written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying" that data. *See* 740 ILCS § 14/15(a); *see also* SAC ¶¶ 70-77. Third, she alleges that Amazon violated Section 15(d) by disclosing her biometric data without her consent. *See* 740 ILCS § 14/15(d); *see also* SAC ¶¶ 87-94.

## **ANALYSIS**

Amazon contends that summary judgment in its favor is warranted on three independent grounds: (1) the PREP Act immunizes Amazon against Redd's claims, or, alternatively, the PREP Act preempts BIPA in this context; (2) Redd has presented no evidence that would allow a reasonable jury to find that Amazon violated BIPA; and (3) Redd is not entitled to any of the forms of relief authorized by BIPA. Because the Court concludes that the PREP Act applies and shields Amazon from suit and liability, it declines to reach Amazon's other arguments.

The PREP Act's immunity provision states:

> Subject to the other provisions of this section, a covered person *shall* be immune from suit and liability under Federal and *State law* with respect to *all* claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure if a declaration under subsection (b) has been issued with respect to such countermeasure . . . .

42 U.S.C. § 247d-6d(a)(1) (emphasis added). *Loss* means "any type of loss." *Id*. § 247d-6d(a)(2)(A) (emphasis added). The "scope" of immunity "applies to *any* claim for loss that has a causal relationship with the administration to or use by an individual of a covered countermeasure,

5

including a causal relationship with the . . . administration . . . or use of such countermeasure. *Id.* § 247d-6d(a)(2)(B) (emphasis added).

A suit for damages and injunctive and declaratory relief brought under the BIPA is a suit under state law. Moreover, there is no dispute that Amazon is a "[c]overed person" under the PREP Act, 42 U.S.C. § 247d-6d(i)(2) or that the administration of the temperature screenings to Redd is a "[c]overed countermeasure" under the PREP Act, *id*. at § 247d-6d(i)(1). *See* Doc. 85 at 7-9; Doc. 96 at 6-10. All that Redd contests is whether her BIPA claims assert "claims for loss" under the PREP Act and her loss was causally related to that covered countermeasure. More specifically, as to the first issue, Redd argues that her BIPA claims fall outside the scope of PREP Act immunity because the immunity applies only to "certain tort claims," not claims under the BIPA for statutory violations, and only if those claims result in one of the specific types of loss listed in Section 247d-6d(a)(2)(A) of the Act. The Court disagrees.

The starting and ending point of the Court's analysis is the plain language of the PREP Act. *In re Algozine Masonry Restoration, Inc.*, 5 F.4th 827, 828 (7th Cir. 2021) ("When interpreting a statute, we look first to the statutory language. When the language is plain[,] we enforce it without further ado."); *Bostock v. Clayton County, Georgia*, 590 U.S. 644, 674 (2020) ("[W]hen the meaning of the statute's terms is plain, our job is at an end."). The PREP Act's text makes clear that Redd's suit is a "claim[] for loss" within the plain language of the Act. The Court reaches this conclusion after examining the plain language of 42 U.S.C. § 247d-6d(a)(1) and § 247d-6d(a)(2)(B). First, the PREP Act "covers 'all claims for loss' related to the administration or use of covered countermeasures. The use of 'all' indicates a sweeping statutory reach." *Maney v. Brown*, 91 F.4th 1296, 1302 (9th Cir. 2024) (certain internal quotes and citation omitted); 42 U.S.C. § 247d-6d(a)(1). Second, the scope of the immunity is broad as it expressly "applies to *any*

6

claim for loss that has a causal relationship with the administration to or use by an individual of a covered countermeasure, including a causal relationship with the . . . administration . . . or use of such countermeasure." 42 U.S.C. § 247d-6d(a)(2)(B) (emphasis added). Nothing in the Act limits the scope of its immunity to "certain tort claims" or excludes claims for "statutory violations."

The broader statutory context confirms the Court's interpretation that the Act provides Amazon immunity from suit and liability for Redd's BIPA claims. "It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Home Depot U.S.A., Inc. v. Jackson*, 587 U.S. ----, 139 S. Ct. 1743, 1748 (2019) (quoting *Davis v. Mich. Dept. of Treasury*, 489 U.S. 803, 809, (1989)); *see also Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 455 (2022) (words must be "interpreted in their context, not in isolation") (internal quotes and citation omitted). The PREP Act includes one exception to its grant of immunity for covered countermeasures administered by covered persons. The "sole exception" to the immunity granted under the PREP Act is a federal action for "death or serious physical injury proximately caused by willful misconduct."[6] 42 U.S.C. § 247d-6d(d)(1). That exception does not exempt BIPA statutory violations from the Act's immunity protections. Because Redd does not allege death or serious physical injury, the only exception to the Act's immunity does not include Redd's BIPA claims.

Moreover, the Act bars all claims "under Federal and State law" that assert "any type of loss" related to administration or use of covered countermeasures. 42 U.S.C. §§ 247d-6d(a)(1), 247d-6d(a)(2)(A). Redd's BIPA claims plainly assert a type of privacy loss. *See* SAC ¶ 9 (alleged "[a]s a result of Defendants' conduct, Plaintiff and the putative Class lost the right to control the

---

[6] Such claims for willful misconduct must be filed in the United States District Court for the District of Columbia. *See id.* § 247d-6d(e)(1); *Martin v. Petersen Health Operations, LLC*, 37 F.4th 1210, 1213 (7th Cir. 202 19842) (§ 247d-6d(d)(1) "create[s] a federal claim (payable from a federal fund)" and "covers only a subset of potential wrongs, those involving willful misconduct in using covered countermeasures.").

7

collection, use, and storage of their biometric identifiers and information and were exposed to ongoing, serious, and irreversible privacy risks."); *McDonald*, 193 N.E.3d at 1267 (BIPA claim asserted the "*loss* of the ability to maintain [] privacy rights.") (emphasis added); *Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617, 620 (7th Cir. 2020) (Defendant's "failure to comply with the [BIPA] resulted, both for [plaintiff] and others similarly situated, in the *loss of the right* to control their biometric identifiers and information.") (emphasis added).

Redd's interpretation of what constitutes a covered "loss" under the PREP Act contravenes the Act's express language. Again, Section 247d-6d(a)(1) states PREP Act immunity applies to "*all claims for loss* caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure[.]" (emphasis added). In turn, Section 247d-6d(a)(2)(A) defines "loss" in sweeping terms to mean "*any* type of loss, *including*"—not limited to—the enumerated examples.[7] (Emphasis added). In other words, the list of covered losses in Section 247d-6d(a)(2)(A) is illustrative, rather than exhaustive. See *Campbell v. Acuff-Rose, Music, Inc.*, 510 U.S. 569, 577–78 (1994) (statutory use of the term "including" indicates an "'illustrative and not limitative' function of the examples given") (citation omitted); *Simon v. Cooperative Educational Service Agency #5*, 46 F.4th 602, 608 (7th Cir. 2022) (explaining that the word "including" suggests "an illustrative—rather than exhaustive—list."). Therefore, the four examples in the Act are not the exclusive examples of the types of loss covered under the PREP Act.

To support her argument, Redd relies upon an advisory opinion of the General Counsel of the Department of the Department of Health and Human Services, which states that "PREP Act

---

[7] Section 247d-6d(a)(2)(A) defines "loss" as "any type of loss, including—(i) death; (ii) physical, mental or emotional injury, illness, disability, or condition; (iii) fear of physical, mental or emotional injury, illness, disability, or condition, including any need for medical monitoring; and (iv) loss of or damage to property, including business interruption loss. 42 U.S.C. § 247d-6d(a)(2)(A).

8

immunity . . . is limited to claims for death, physical, mental or emotional injury, illness, disability or condition, fear of such harm or need for medical monitoring, and damage to property, including business interruption loss." U.S. Dep't of Health & Human Servs., Off. of Gen. Couns., Advisory Op. 20-04 at 3 (Oct. 23, 2020). But Advisory Opinion 20-04 does not help Redd because the opinion itself states that it does not "bind the Department of Health and Human Services or the federal courts" and it "does not have the force or effect of law." Moreover, Advisory Opinion 20-04 provides no analysis for its conclusion. The opinion cites only to 42 U.S.C. § 247d-6d generally and a May 19, 2020 Advisory Opinion of the General Counsel, which itself cites no authority for the proposition that PREP Act immunity is limited to personal injury or damage to property. *Id*. at 3 n.13 (citing https://www.hhs.gov/sites/default/files/prep-act-advisory-opinion-hhs-ogc.pdf). As explained above, the General Counsel's opinion is contrary to the plain text of the Act. Accordingly, it is not persuasive and is entitled to no deference on the question of whether the PREP Act immunity is limited to personal injury or damage to property claims. *See Martin*, 37 F.4th at 1214 (rejecting General Counsel of the Department of Health and Human Services' interpretation of the PREP Act where the "reasoning [was] thin" and "apply[ing] the statute without an administrative overlay.").

The other authorities Redd relies on to support her assertion that the PREP Act immunity applies only to certain tort claims are equally unavailing. *McDonald v. Symphony Bronzeville Park, LLC*, 193 N.E.3d 1253 (Ill. S.Ct. 2022), concerned whether the exclusivity provisions of the Illinois Workers' Compensation Act barred an employee's claims for liquidated damages under the BIPA. The Illinois Supreme Court held that IWCA's exclusivity provision applies only to claims alleging "harmful change[s] in the human organism" and does not preempt BIPA claims for violation of a privacy right in the employment context. *Id*. at 1267-68. *McDonald's* analysis

9

has no application here on the scope of the PREP Act, which broadly defines the "claims for loss" as "*any* type of loss, *including*" physical, mental, or emotional injury. 42 U.S.C. § 247d-6d(a)(2)(A). Redd also cites two district court decisions from this district finding that the violation of a privacy right under BIPA is not a physical or psychological injury subject to Illinois's two-year statute of limitations for personal injury actions. *Vaughan v. Biomat USA, Inc.*, 2022 WL 4329094, at *11 (N.D. Ill. Sept. 19, 2022); *Quarles v. Pret A Manger (USA) Ltd.*, 2021 WL 1614518, at *4 (N.D. Ill. Apr. 26, 2021). However, neither decision involved, let alone analyzed, the question of whether a BIPA claim is a covered loss under the PREP Act. Accordingly, these cases also have no bearing on the scope of the PREP Act. Thus, the Court concludes that Redd's BIPA claims assert a loss within the scope of PREP Act immunity.

The PREP Act also requires a causal nexus with the administration or use of a countermeasure. Redd argues that her claims are not causally related to Amazon's use of ICI camera systems. Specifically, she contends that her claims "stem" not from Amazon's use of the ICI camera systems "in and of itself," but, rather, "from Amazon's failure to follow BIPA's informed consent requirements." Doc. 96 at 13. Further, Amazon argues that Redd's claims meet the § 247d-6d(a)(1) standard because her alleged losses "aris[e] out of" and "relate[e] to" Amazon's deployment of the ICI camera systems. Amazon similarly contends that Redd's alleged losses have a causal relationship to Amazon's use of the ICI cameras.[8]

Section 247d-6d(a)(1) provides immunity to "all claims for loss *caused by, arising out of, relating to, or resulting from* the administration to or the use by an individual of a covered countermeasure." (emphasis added). The Seventh Circuit has not considered the meaning of the

---

[8] *See also* 42 U.S.C. § 247b-6d(a)(2)(B) ("The immunity under paragraph (1) applies to any claim for loss that has a causal relationship with the administration to or use by an individual of a covered countermeasure, including a causal relationship with the . . . administration . . . or use of such countermeasure.").

phrases "arising out of" or "relating to" in § 247d-6d(a)(1) of the PREP Act. In other contexts, the Seventh Circuit has found that the ordinary meaning of "arising out of" or "relating to" is broad. *United States v. Liestman*, 97 F.4th 1054, 1061 (7th Cir. 2024) ("relating to" is ordinarily "the broadest of connecting language."); *IAC/InterActive Corp v. Roston*, 44 F.4th 635, 641(7th Cir. 2022) (wording "arising out of or related to . . . is quite broad"); *Welborn Clinic v. MedQuist, Inc.*, 301 F.3d 634, 639 (7th Cir. 2002) (characterizing an arbitration clause covering all claims either "arising out of" or "relating to" the contract as "a very broad, standard arbitration clause"); *Gregory v. Home Ins. Co.*, 876 F.2d 602, 606 (7th Cir. 1989) ("'related to' covers a very broad range of connections.").

In a recent opinion by the Ninth Circuit, the Court examined whether the plaintiff's claims were for loss "relating to" the use of a covered countermeasure within § 247d-6d(a)(1). *Hampton v. California*, 83 F.4th 754, 763-65 (9th Cir. 2023). The Ninth Circuit explained that the surrounding verbal phrases of "caused by," "arising out of," and "resulting from" in § 247d-6d(a)(1) "all connote some type of causal relationship." *Id*. at 764. The Court held that "[a]t the very least, then, for PREP Act immunity to apply, the underlying use or administration of a covered countermeasure must have played some role in bringing about or contributing to the plaintiff's injury. It is not enough that some countermeasure's use could be described as relating to the events underpinning the claim in some broad sense." *Id*. at 764.

Amazon's administration of the ICI camera systems without informed consent clearly "played some role in bringing about or contributing to [Redd's] injury." *Hampton*, 83 F.4th at 764. Redd claims that her loss of the ability to maintain her privacy was caused by Amazon's failure to comply with BIPA's requirements prior to use of the ICI camera systems. Redd's claims thus flow directly from the administration and use of the ICI camera systems. In other words, the fact that

11

Amazon administered and used the ICI camera systems, in and of itself, dictated whether it needed to follow BIPA's informed consent requirements. If Amazon had not used the cameras, the issue of consent would be moot. Thus, the use of the cameras is *a* key nexus to Redd's claim, and ultimately contributed to the injury and the alleged privacy violation that she claims she suffered. Under the broad language of "arising out" of or "relating to," the use of the cameras need not be the sole cause of the injury, but simply one that played some role in that situation, which, as demonstrated above, it plainly did.

Moreover, several courts have persuasively held that PREP ACT immunity applies to similar claims based on lack of informed consent regarding countermeasures. *Deborah Fust v. Gilead Sciences, Inc.*, 2024 WL 732965, at *5–7 (E.D. Cal. Feb. 21, 2024) (the PREP Act immunity applied to plaintiffs' claims for physical injuries and death based on lack of informed consent about the dangers of taking an antiviral medication for COVID-19 treatment), reconsideration denied, *Fust v. Gilead Sciences, Inc.*, 2024 WL 1367353 (E.D. Cal. Apr. 1, 2024); *Baghikian v. Providence Health & Services*, 2024 WL 487769, at *4 (C.D. Cal. Feb. 6, 2024) ("the PREP Act applies to claims based on failure to obtain consent."); *Bird v. State*, 537 P.3d 332 (S.Ct. Wyo. 2023) (the PREP Act barred prisoners' claims that they did not give consent to receive Janssen COVID-19 vaccine because their claims were causally related to the administration of a covered countermeasure and did not involve death or serious physical injury caused by willful conduct); *M.T. v. Walmart Stores, Inc.*, 528 P.3d 1067, 1084 (Kan. App. 2023) (the PREP Act applies to "claims based on the failure to obtain consent" and "a claim based on the administration of a covered countermeasure without parental consent is causally related to the administration of a covered countermeasure."); *Cowen v. Walgreen Co.*, 2022 WL 17640208, at * 3 (N.D. Okla. Dec. 13, 2022) (plaintiff's injuries from receiving COVID-19 vaccination without her knowledge

or consent "actually resulted from administration of the COVID-19 vaccine"); *Happel v. Guilford Cty. Bod. of Ed.*, 899 S.E.2d 387, 394 (N.C. App. 2024) (the "broad scope of immunity provided by the PREP Act applies" to "[p]laintiffs' claims relating to the administration of the COVID-19 vaccine" without parental consent); *Parker v. St. Lawrence County Pub. Health Dept.*, 102 A.D.3d 140, 143-44 (N.Y. App. Div. 2012) (preemption clause and "sweeping" immunity language of BIPA barred all state law tort claims based on defendant's "failure to obtain [parental] consent" to use of countermeasure).[9]

In contrast, Redd relies only on a single district court case, *Haro v. Kaiser Found. Hosps.*, 2020 WL 5291014 (C.D. Cal. Sept. 3, 2020). In *Haro*, the plaintiff claimed that the defendant had required its hourly employees to arrive at least 15 minutes before the start of their work shift so that they could undergo screening for COVID-19 but did not compensate the plaintiff for that time. *Id.* at *1. The plaintiff sought compensation under the state minimum wage laws. *Id.* The defendant contended that the PREP Act completely preempted plaintiff's claims. *Id.* The *Haro* court held it could not find that the PREP Act completely preempted the plaintiff's claims. *Id.* at *3. However, the court concluded that the plaintiff's minimum wage claim was "not causally connected to the screening procedures themselves, but rather the requirement that employees *show up 15 minutes before their shifts start*." *Id*. (emphasis in original). Put another way, the employer's administration and use of the covered countermeasures did not contribute to that financial injury— whether the early arrival was for a COVID-19 screening or another work-related requirement was irrelevant because the cause of the injury was the unpaid time.

---

[9] *See also Storment v. Walgreen Co.*, 2022 WL 2966607, at *3 (D. N.M. July 27, 2022) (PREP Act barred negligence claims arising out of injuries sustained from falling in parking lot after receiving COVID-19 vaccine where store failed to provide "chairs to sit on for monitoring" after vaccination, which could not be "divorced from the administration of a covered countermeasure.")

13

Unlike *Haro*, Redd's alleged injuries have nothing to do with Amazon's compensation policies related to its temperature checks. Rather, Redd claims that her privacy loss is exclusively attributable to Amazon's administration or use of the ICI camera systems without informed consent. The alleged harm inflicted was not independent of the administration and use of the ICI camera systems. The Court therefore concludes that Redd's BIPA claims and injuries are based on Amazon's administration and use of the ICI camera systems for temperature checks to prevent the spread of COVID-19. Since the administration and use of the ICI camera systems played a role in bringing about or contributing to Redd's injury, the PREP Act applies.

## CONCLUSION

For the foregoing reasons, Amazon is entitled to statutory immunity based on the PREP Act. Judgment shall enter in favor of Amazon and against Redd. Because the Court is granting Amazon's motion for summary judgment on Redd's individual claims and no class has been certified, this case is terminated. *Phillips v. Ford Motor Co.*, 435 F.3d 785, 787 (7th Cir. 2006) ("[I]f no motion to certify has been filed (perhaps if it has been filed but not acted on), the case is not yet a class action and so a dismissal of the named plaintiff['s] claims should end the case.").

**SO ORDERED.**

Dated: June 4, 2024

Sunil R. Harjani
United States Magistrate Judge